John CAMPBELL, Jr., et al.,
Petitioners, Appellants,

v.

Michael V. FAIR, Commissioner of
Correction, Respondent, Appellee.

No. 87–1311

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1987.

Decided Jan. 26, 1988.

Anthony M. Cardinale, with whom Robert L. Sheketoff and Zalkind, Sheketoff, Homan, Rodriguez & Lunt, Boston, Mass., were on brief, for petitioners.

William A. Gottlieb, Asst. Atty. Gen., Crim. Bureau, with whom James M. Shannon, Atty. Gen., and A. John Pappalardo, Deputy Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief for respondent.

Before COFFIN, Circuit Judge,
BROWN,* Senior Circuit Judge, and
TORRUELLA, Circuit Judge.

* Of the Fifth Circuit, sitting by designation.

**2**

TORRUELLA, Circuit Judge.

We review here the district court's denial of Campbell, Keigney and Doherty's petitions for writs of habeas corpus. They argue before us that their constitutional rights were violated because the prosecution in state courts knowingly relied on perjured testimony and failed to disclose impeaching testimony. Doherty also claims the evidence was insufficient to sustain his conviction.

Campbell, Keigney and Doherty, all inmates of MCI–Walpole, were indicted on February 3, 1977, in Norfolk County, Massachusetts, for the murder of Robert Perrotta, who also was an inmate at MCI–Walpole at that time. They were tried, and a jury returned verdicts of first degree murder. The convictions were affirmed by the Supreme Judicial Court (SJC), in *Commonwealth v. Campbell*, 378 Mass. 680, 393 N.E.2d 820 (1979).

The defendants filed a motion for new trial in 1984, which was denied after an evidentiary hearing. The Honorable Justice Wilkins, in his capacity as a single justice of the SJC, denied their motion for leave to appeal the denial of new trial. Defendants subsequently filed petitions for writs of habeas corpus in the United States District Court. Judge Mazzone of the District of Massachusetts issued a Memorandum and Order on March 5, 1987, dismissing their petitions. The case now comes before us on appeal.

Appellants' two legal arguments concern distinct sets of facts, which will be explored more fully in the analysis of each argument: the first issue makes relevant the facts concerning the impeachability of the prosecution's star witness, while the second requires perusal of the evidence establishing appellant Doherty's role in the murder.

I

We will examine first whether the trial was constitutionally tainted by a lack of opportunity to explore the impeachability of the principal eyewitness against the petitioners. Thomas Carden was the only witness who could connect the petitioners with the murder. He had been the brother-in-law of the victim and was his close friend. He was also an inmate at Walpole at the time of the murder, and the first inmate in the history of that institution to testify for the prosecution in an inmate murder case.

His impeachability stems from the favorable resolution of some legal matters affecting him. At the time he testified, he was serving a twenty- to thirty-year sentence. The prosecution to some extent held out that lengthy sentence as insurance against any expectation of favorable treatment Carden may have had in exchange for his testimony. Unbeknownst to any of the parties, however, Carden's attorney had recently filed a motion to revise and revoke that sentence. Thirty days after trial, the prosecutor testified on Carden's behalf in that motion, with the result that his sentence was reduced to eleven years. This reduction made Carden eligible for parole at the end of a federal sentence he was serving concurrently, rather than several years later.

Another conviction is also relevant. Between the time when he began to cooperate with the prosecution and the time of trial, Carden pleaded guilty to bank robbery. The prosecutor in that case made no sentencing recommendation, and the judge imposed a sentence that did not interfere with Carden's federal parole eligibility date. In a confused passage of the transcript Carden arguably states that that case is still pending. That same passage is subject to the interpretation that the witness was referring to the motion to revise and revoke mentioned above, or to a different case altogether. Although petitioners now argue that Carden lied and the prosecutor failed to correct him, neither the prosecutor nor defense counsel found anything odd in Carden's answers, and no attempt was made to correct or clarify any answers.

The final, crucial fact to note on this point is that in an evidentiary hearing on a motion for new trial, and after considering the testimony of all relevant persons, the trial court explicitly found that the prosecutor had made no promises to Carden, and

had no knowledge of the motion to revise and revoke when he conducted petitioners' trial.

In their argument, however, petitioners repeatedly claim that the prosecutor "failed to disclose promises to a key witness," and then bring to our attention the Supreme Court's disapproval of such actions. *See, e.g., Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). At the same time, they fail to note the strictures imposed on us by 28 U.S.C. § 2254 when reviewing a state court's factual findings. We must presume these findings to be correct, with the burden on the applicant to establish the contrary by convincing evidence, unless one of the eight exceptions listed in § 2254(d) applies. *See Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982).

The only exception that is relevant here is the one set forth in subsection (d)(8): factual findings are not to be disturbed

[u]nless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, *and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.* . . .

The plea to find an undisclosed promise was denied by the trial judge, by the SJC, by a single justice of the SJC, and by the Federal district court. The record demonstrates that the trial court's finding was based on, among other things, the testimony of the prosecutor and Carden, whose credibility that court was in an eminently better position to evaluate. There is no doubt that the finding is "fairly supported by the record."

Whether the prosecutor knowingly relied on perjured testimony in failing to correct Carden's alleged statement that there was a pending case, when in fact he (the prosecutor) believed there was none, presents a slightly different question. The Supreme Court has recognized "the well-established rule that 'a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 3382, 87 L.Ed.2d 481 (1985) (quoting *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976)).

Even disregarding serious questions concerning the knowledge of the prosecutor, and whether this testimony was actually perjured, we need not reverse, since we find that the "false" testimony could not have affected the judgment of the jury. The appellants repeatedly state that pending charges could not be used to impeach Carden because of his twenty- to thirty-year sentence. If that is the case, then the jury would have even less reason to doubt Carden on the basis of a case that had already been settled. The alleged perjury does not establish a crucial element of the case, but merely presents some evidence that Carden may have had some reason to expect help from the prosecutor in the future, without, however, a promise in that respect. We do not think the jury would have been significantly affected by this particular kernel of information.

The more seriously impeaching news is the pendency of the motion to revise and revoke. Carden knew that such a motion had been filed on his behalf, and he may well have expected some cooperation from a grateful prosecutor, especially since Carden had already received some assistance. Petitioners urge us to impute knowledge of this motion to the prosecutor, in order to apply the more punitive standard for prosecutorial failure to disclose exculpating evidence, rather than the stricter standard for newly discovered evidence. Unfortunately petitioners provide us with no reason to impute this knowledge to Prescott, the prosecutor, other than the mere fact that Carden may have expected Prescott's help on the motion.

In fact, there is good reason not to charge Prescott with this knowledge. Ap-

pellants cannot claim that Prescott actualy knew of the motion since the state court expressly, and reasonably, found no actual knowledge. We hesitate to impose on the prosecution the burden of discovering any action taken by any one of its witnesses that may bring into question the disinterested quality of that witness' testimony.

Since the pendency of the motion is simply newly discovered evidence, therefore, petitioners must shoulder a heavy burden if they wish to establish that the Constitution demands they receive a new trial. We have previously stated that "[i]t may be assumed that a compelling claim for relief might be presented when newly available evidence conclusively shows that a vital mistake had been made." *Grace v. Butterworth*, 586 F.2d 878, 880 (1st Cir. 1978). We review, of course, only for errors of constitutional magnitude. *Subilosky v. Callahan*, 689 F.2d 7, 9 (1st Cir. 1982), *cert. denied*, 460 U.S. 1090, 103 S.Ct. 1788, 76 L.Ed.2d 356 (1983). "[T]he trial court, however, possesses a 'wide degree of discretion' and ... the remedy is to be 'sparingly used'." *Grace*, 586 F.2d at 881 (quoting *Sawyer v. Mullaney*, 510 F.2d 1220, 1221 (1st Cir.1975)). We cannot find that the trial court abused that discretion here. The jury chose to believe Carden despite the fact that it heard—albeit erroneously—that he had a pending case rather than a pending motion, and despite a plethora of evidence regarding his bad character. New evidence of a pending motion alone, without any prosecutorial promise of assistance, is not so momentous as to make denial of a new trial a "vital mistake," or one of constitutional magnitude.

## II

Whether sufficient evidence was adduced at trial to support Doherty's conviction is a more difficult question. The Supreme Court directs us, when hearing a challenge under 28 U.S.C. § 2254 to a state court conviction, to grant the applicant habeas corpus relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979). This standard must be applied, of course, with specific reference to the elements of the offense as defined by state law. *Id.* at 324, n. 16, 99 S.Ct. at 2792, n. 16.

Doherty was convicted of first degree murder, for aiding and abetting the principals in the crime. "Murder committed with deliberately premeditated malice aforethought, or with extreme atrocity and cruelty, ... is murder in the first degree." Mass.Gen.L. ch. 265, § 1. Malice aforethought includes the intent to commit great bodily harm as well as the intent to kill. *Commonwealth v. Campbell, supra*, 393 N.E.2d at 825. Under Massachusetts law, one may be punished to the same extent as a principal if one "aids in the commission of a felony." Mass.Gen.L. ch. 274, § 2.

Doherty argues that there is a complete lack of evidence regarding his mental state, and urges us to reverse his conviction.[1] Mere presence at the scene of the crime, of course, is not evidence of guilt. *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E. 2d 499, 507, *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *see also United States v. Campa*, 679 F.2d 1006, 1010 (1st Cir.1982). However, a defendant may aid in the commission of a felony if he, "by agreement, is in a position to render aid to the principal offender, even if he does not participate in the actual perpetration of the crime...." *Soares*, 377 Mass. at 471–72, 387 N.E.2d at 507. As we have said in the context of a federal prosecution: "The vital element to be proven is intent. 'An aider and abettor need not know every last detail of the substantive offense, *see Williams v. United States*, 308 F.2d 664, 666 (9th Cir.1962), but he must share in the principal's essential criminal intent.'" *United States v. Tarr*, 589 F.2d 55, 59 (1st

---

1. The absence of direct evidence of criminal intent is, of course, not fatal to the prosecution's case. The jury may find an agreement implicit in Doherty's actions, *Commonwealth v. White-head*, 379 Mass. 640, 400 N.E.2d 821, 832 (1980), just as it may infer intent from those same actions. *Commonwealth v. Ferguson*, 365 Mass. 1, 309 N.E.2d 182, 187 (1974).

Cir.1978) (quoting *United States v. Sanborn,* 563 F.2d 488, 491 (1st Cir.1977)).

The relevant facts relating to Doherty's participation concern two separate incidents on November 25, 1976, the day of the murder. The cells in MCI–Walpole are arranged in tiers, facing a large central shaft, with a catwalk around the shaft on each floor, and stairs connecting the floors. At about 5:00 PM that day, Carden was walking up the stairs towards Perrotta's cell on the third tier. But when Carden reached that tier, Doherty stopped him. Carden tried to walk past, but was restrained by Doherty's hand on his shoulder. All the while Doherty was addressing him in a very loud voice, and glancing towards Perrotta's cell. When the other two defendants, Campbell and Keigney, walked out of the cell with Perrotta, Doherty abruptly ended the conversation and let Carden pass. Carden found Perrotta visibly agitated.

There is more than sufficient evidence to place the next incident (about two hours later) at the exact time of the murder. Carden had left the cell block and was returning to it, when, from the first floor, he saw Doherty leaning against the railing on the third floor, directly in front of Perrotta's cell. Carden hurried up the stairs, but by the time he reached the second tier he saw Doherty walking quickly away from the cell, and Campbell and Keigney walking out. When he reached the third floor and entered the cell he found Perrotta mutilated and strangled.

From the first incident, the jury could draw the following reasonable inferences. Campbell and Keigney were planning the murder for 5:00 PM, and posted Doherty as a lookout, because they knew Carden was Perrotta's friend and frequent visitor. In fact Perrotta had just come from Carden's cell, where he had spent the afternoon. From the limited information at our disposal it seems the jury could infer that Doherty's conversation with Carden was very unusual, and would not have taken place without an ulterior motive. This would make it highly suspicious in light of all the events of the day. The jury could also believe that Doherty was speaking loudly enough to warn the two principals to either postpone the crime or leave the scene due to Carden's imminent arrival.

From the second incident the jury could conclude that Doherty must have known Campbell and Keigney had killed Perrotta since he was standing directly in front of the cell at the time it was done. It could also conclude that a warning from Doherty that Carden had entered the cell block was the cause of Campbell and Keigney's precipitous exit from the cell. Finally, it could infer from all of the incidents of the day that Doherty was a participant in the plan to murder Perrotta, and would not have been made an eyewitness to the crime unless he shared in the intent to at least inflict some sort of great bodily injury upon Perrotta. Therefore, not only was Doherty clearly in a position to render assistance to Campbell and Keigney, but the jury could have reasonably inferred an agreement to be there, and that Doherty actually rendered some assistance in the form of a warning.

In addition to the deference reserved for the finder of fact in a habeas petition such as this one, we must bear in mind that the state courts have already considered the sufficiency of the evidence. "A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts...." *Jackson v. Virginia,* 443 U.S. at 323, 99 S.Ct. at 2791. We do not abdicate our responsibility to independently review the evidence, but in a close case—and admittedly the evidence here is not overwhelming—we take some comfort in the knowledge that the Supreme Judicial Court of Massachusetts concurs in our estimation of the record. *See Commonwealth v. Campbell, supra.*

In conclusion, we find that there was no constitutional defect either in the prosecution's conduct with respect to the principal witness against petitioners or in the sufficiency of the evidence against petitioner Doherty.

6

The judgment of the district court is therefore *affirmed*.