COMMONWEALTH vs. STEPHEN DOHERTY.

Norfolk. May 7, 1991. - September 12, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Homicide. Intent. Malice. Due Process of Law*, Presumption. *Practice,*
*Criminal*, Presumptions and burden of proof, Instructions to jury, Post-
conviction relief. *Error*, Harmless.

A defendant convicted of a 1976 murder whose appeal was considered in
1979 did not waive his right to raise an issue with respect to the jury
instructions, under *Sandstrom* v. *Montana*, 442 U.S. 510 (1979), as
reinforced by principles expressed in *Francis* v. *Franklin*, 471 U.S. 307
(1985), in a motion for new trial filed in 1989, where the defendant had
not had appellate review of the issue and where the delay did not war-
rant a finding of waiver. [97-99]
In the circumstances of a murder case in which there was no factual basis
for a manslaughter verdict and self-defense was not an issue, the
judge's instruction that malice was "presumed" if the killing was un-
lawful or intentional was correct. [99-101]
In the circumstances of a murder case in which malice of the principals
was not a disputed issue at trial, but only their identity and whether the
defendant was a coventurer, the judge's statement in his instructions to
the jury that malice is presumed from the killing was harmless error.
[101-104]
Statement of the standard articulated by the United States Supreme Court
in determining whether a jury instruction applying an unconstitutional
presumption did not contribute to the verdict and hence was harmless
error. [102-103]
In a criminal case, the statement in the judge's instruction on malice that
a person is presumed to intend to do what he does do was immaterial
and harmless as to the defendant inasmuch he was charged under a
joint venture theory and was not proved to have done any act with re-
spect to the victim. [104] O'CONNOR, J., dissenting.

INDICTMENT found and returned in the Superior Court on
February 3, 1977.

A motion for a new trial, filed on March 9, 1989, in the Supreme Judicial Court for the county of Suffolk, was transferred to the Superior Court Department and was considered by *Roger J. Donahue*, J.

*Robert L. Sheketoff* (*Anthony M. Cardinale* with him) for the defendant.

*James Lang*, Assistant District Attorney, for the Commonwealth.

The defendant, pro se, submitted a brief.

WILKINS, J. On August 7, 1979, this court affirmed the conviction of Stephen Doherty (defendant), John Campbell, Jr., and Arthur Keigney of the November 25, 1976, murder in the first degree of Robert A. Perrotta (victim) in his cell at the Massachusetts Correctional Institution at Walpole. *Commonwealth* v. *Campbell*, 378 Mass. 680 (1979). After that date, but before the Supreme Court's decision in *Francis* v. *Franklin*, 471 U.S. 307 (1985), the defendant on three occasions unsuccessfully sought postconviction relief by way of motions for a new trial and unsuccessfully sought habeas corpus relief in the Federal courts. See *Campbell* v. *Fair*, 838 F.2d 1 (1st Cir.), cert. denied, 488 U.S. 847 (1988).

We deal here with the defendant's fourth motion for a new trial. A judge of the Superior Court denied that motion on the ground that "[t]he issues being presently raised by the defendant have been hashed and re-hashed by state and federal trial courts and appellate courts over a period of some thirteen years." He denied the motion for a new trial because "it presents no issue which has not already been adjudicated."

A single justice of this court, acting under the "gatekeeper" provision of G. L. c. 278, § 33E (1990 ed.), allowed the defendant to appeal to this court from the rejection of his contention that the jury charge contained constitutionally infirm language concerning presumptions of malice and intent.[1]

---

[1]In doing so, the single justice implicitly ruled that the issues as to which the defendant sought leave to appeal were new and substantial. That ruling does not, however, foreclose this court from considering

We conclude that the defendant has not waived or otherwise lost his right to a determination on the merits of his challenge to the jury instructions, but that he is not entitled to a new trial.

The evidence justifying the defendant's conviction is set forth in our opinion on the defendant's appeal. *Commonwealth* v. *Campbell, supra* at 682-685. To make the issues now before us understandable, we need only summarize the general circumstances of the Commonwealth's case. The Commonwealth sought to prove, based primarily on the testimony of an inmate named Thomas Carden, that the defendants Campbell and Keigney killed the victim in his cell by strangulation, after tearing his penis from his body. This court characterized the evidence against these two defendants as "somewhat thin" but sufficient to warrant submitting the case to the jury. *Id.* at 688. The case against the defendant, called "a somewhat closer question," was based on the theory that the defendant had acted as a lookout for Campbell and Keigney. *Id.* at 688-689.[2]

1. We reject the Commonwealth's claim, accepted by the motion judge, that the defendant has already had appellate review of his challenge to the jury instructions. We also reject the Commonwealth's argument that the defendant has waived his right to such a review. The defendant relies on principles expressed in *Sandstrom* v. *Montana*, 442 U.S. 510

---

whether the defendant has waived his right to present the issues that are before us.

We do not consider other issues that the defendant argues in his pro se brief as to which no leave to appeal has been granted.

[2]We said, "Carden testified that Doherty obstructed his passage to Perrotta's cell shortly before 5 P.M. by placing a hand on his shoulder and engaging in loud conversation. He further testified that Doherty abruptly ceased these activities when Keigney and Campbell emerged from Perrotta's cell. Carden also testified to seeing Doherty leaning over the rail in front of Perrotta's cell just before the body was discovered. The jury might reasonably infer that Doherty was acting as a lookout on both occasions. If they so found, they would be justified in concluding that at the time Keigney and Campbell were murdering Perrotta, Doherty was present near the scene, purposefully aiding and abetting them in the commission of the crime, and that by reason thereof he was guilty as a principal." *Id.*

(1979), decided on June 18, 1979, after oral argument of his appeal but before it was decided on August 7, 1979. This court's opinion on the defendant's appeal did not discuss the jury instructions in light of the *Sandstrom* opinion. The significant force of the defendant's argument arises not from the *Sandstrom* case itself, however, but from the standard for testing the consequences of a *Sandstrom* violation that was first expressed in *Francis* v. *Franklin*, 471 U.S. 307 (1985). In deciding what a reasonable juror could have understood, a constitutionally infirm jury instruction containing impermissible burden-shifting language is not cured by "[l]anguage that merely contradicts and does not explain [the] constitutionally infirm instruction." *Id.* at 322.

The importance of *Francis* v. *Franklin* to the defendant's argument is pointed up significantly in this Commonwealth by the differing results in *Commonwealth* v. *Repoza*, 382 Mass. 119 (1980) (*Repoza I*), and in *Commonwealth* v. *Repoza*, 400 Mass. 516 (1987) (*Repoza II*). In *Repoza I*, on our own motion, we reviewed the jury instructions under G. L. c. 278, § 33E, and concluded that the instruction that the intentional use of a deadly weapon created a presumption of malice violated *Sandstrom* principles. *Repoza I, supra* at 132-133. We concluded, however, that the judge's error was· "vitiated by his repeated and careful instructions reinforcing the principle that the burden of proof on every essential element of the crime invariably remains with the Commonwealth." *Id.* at 134. After the Supreme Court decided *Francis* v. *Franklin*, we considered the *Sandstrom* issue again in Repoza's challenge to the denial of his postappeal motion for a new trial. We ordered a new trial (*Repoza II, supra* at 522), concluding that the "saving" language of the charge, which we had identified in *Repoza I*, did not meet the standard of *Francis* v. *Franklin*. It "did not cure the possibility that, '[i]n light of the instructions on intent given in this case, a reasonable juror could thus have thought that, although intent must be proved beyond a reasonable doubt, proof of [stabbing the victim] and its ordinary consequences constituted proof of intent beyond a reasonable doubt unless

the defendant persuaded the jury otherwise.' *Francis, supra* at 319. Clearly, the instructions at trial do not meet the requirements of *Francis.*" *Repoza II, supra* at 521-522. See *Commonwealth* v. *Sires,* 405 Mass. 598, 600-601 (1989), applying *Francis* v. *Franklin* to a charge given prior to the *Sandstrom* opinion and ordering a new trial, years after an unsuccessful appeal of a conviction of murder in the first degree in *Commonwealth* v. *Sires,* 370 Mass. 541 (1976).

The defendant argues that his situation is substantially the same as that of Repoza. Repoza was not denied postappeal relief on the ground that he should have raised the point earlier, even though this court had identified and discussed a *Sandstrom* error on Repoza's appeal.[3] Although there are differences, as we shall see, between Repoza's case and this one in the nature and significance of the alleged errors in the jury instructions, *Repoza II* demonstrates the significance of *Francis* v. *Franklin* and shows why we must conclude that the defendant has not waived his right to argue the alleged *Sandstrom* error as reinforced by the principles expressed in *Francis* v. *Franklin,* unless for some reason he has waived that right by inaction after *Francis* v. *Franklin* was decided.

The defendant's March, 1989, motion for a new trial for the first time raised the *Sandstrom* issue in the context of *Francis* v. *Franklin.* The Commonwealth does not argue that the delay in filing that motion following the decision in *Francis* v. *Franklin* warrants a ruling that the defendant waived his right to advance the argument when he did. No case of this court has held that a delay of that sort results in the loss of rights. See *Commonwealth* v. *Burkett,* 396 Mass. 509, 512 (1986). We must, therefore, consider the merits of the defendant's objections to the jury charge.

2. We start with the language contained in the following paragraph, with the assertedly improper language appearing in italics:

---

[3] This court's opinion on the appeal of the defendant now before us did not discuss the jury charge in relation to the *Sandstrom* case. If the opinion had done so, it is most unlikely that the defendant would have fared any better than did Repoza in his appeal (*Repoza I*).

"Our Supreme Judicial Court has said that every un-
lawful motive may be inferred from an unlawful killing
and *if there are no circumstances tending to show justi-
fication or excuse, there is nothing to rebut the natural
presumption of malice.* And they go on to say that mal-
ice does not necessarily imply ill will towards the person
killed but it has a more comprehensive meaning, includ-
ing any intent to inflict injury upon another without le-
gal excuse. *So if a defendant or defendants in this case
intentionally, unlawfully killed the deceased, malice is
presumed in this case.*"

The question is whether a reasonable juror could have under-
stood the challenged language to direct him or her in the cir-
cumstances of this case to accept or presume conclusively the
existence of malice solely from the fact that there was a kill-
ing. See *Francis* v. *Franklin, supra* at 325. We think not.

The trial judge summed up his statements in the last sen-
tence of the quoted paragraph, explaining his earlier ones.
He says that, if the killing was done intentionally and unlaw-
fully, "malice is presumed in this case." Because there was
no evidence warranting a manslaughter verdict, the judge's
conclusional statement was correct in this case. In other
words, because there was no basis for a manslaughter ver-
dict, if the jury were to find that the killing was intentional
and unlawful, the killing was committed with malice as a
matter of law. "The jury in this case reasonably could not
have understood from the judge's instructions that, if they
found that the defendant killed the victim, and if there was
no evidence of justification or excuse, either malice had been
established conclusively or the defendant had the burden to
prove lack of malice. The jury reasonably could have under-
stood the statement in question only to refer to an intentional
killing. An intentional killing without justification or excuse
is indeed an unlawful killing with malice aforethought, and is
murder." *Commonwealth* v. *Adrey*, 397 Mass. 751, 755
(1986).

The word "presumed" in the charge does not have an unconstitutional quality in a *Sandstrom* sense because, where there is no evidence warranting a finding of manslaughter and self-defense is not an issue, there is malice in all situations where a killing is intentional. Indeed, the reference to "an unlawful killing" in the first sentence of the allegedly offending paragraph seems reasonably to say correctly, on these facts, that "the natural presumption of malice" arises when (a) there is no justification or excuse and (b) the killing is unlawful.[4]

This challenged language may be artless. It may be unclear. It might well be bad in the *Sandstrom* sense if used in other cases, such as those in which a finding of guilt of manslaughter is a possible verdict. Where, however, there was no evidence justifying a finding of involuntary manslaughter or raising a reasonable doubt whether the killing was excused or justified, a presumption of (or, stated in better language, a finding of) malice (and murder) is required if the killing was unlawful or if it was intentional. Consequently, we find no *Sandström* error in the challenged language in the paragraph quoted above.

3. The defendant's second objection to the judge's instructions presents a more difficult issue. The portion of the charge to which the defendant objects, with the specifically challenged language in italics, reads as follows:

> "So how do you determine what is in someone's mind? Naturally, that is extremely difficult and so the law allows you to work backwards by taking the effect or killing, if you will, determining the killing, and inferring from that killing and from the acts of the participants what their intent was. *We are presumed to intend to do what we do do. Otherwise, we wouldn't have done it.*"

---

[4]For completeness, a reference to the absence of a basis for a finding of involuntary manslaughter would be appropriate, although not required on the facts of this case.

The statement that "we are presumed to intend to do what we do do" could be understood in context to say that a person is presumed to have intended to kill if that is the result of what he did do. The words have the potential of being understood to create a presumption, probably a rebuttable one, that runs afoul of *Sandstrom* principles. See *Sandstrom v. Montana, supra* at 519. As to all the defendants, but particularly as to the two coventurers, Campbell and Keigney, the faulty language, if considered in isolation, might be perceived, because of the fact of the killing alone, as relieving the Commonwealth of its burden of proving malice beyond a reasonable doubt.

The malice of the principals was not, however, a disputed issue at the trial. The strangulation of the victim with two bathrobe cords and the dismemberment of his penis demonstrated conclusively that whoever committed these acts did so intentionally. See *Commonwealth v. Campbell*, 378 Mass. 680, 684-685 (1979). By contrast, *Francis v. Franklin* involved a case in which the "facts did not overwhelmingly preclude" the absence of an intent to kill. *Francis v. Franklin, supra* at 325-326. See *Repoza II*, characterizing *Francis v. Franklin* as a case that "specifically concerns the limited category of criminal prosecutions in which intent is the pivotal element of the crime charged and the only contested issue at trial." *Repoza II, supra* at 519.[5] Here, the matter of the principals' intent was not in dispute, unlike the situation in Repoza's case. See *Repoza II, supra* at 522 n.7 ("intent was a live issue and the error cannot be considered to be harmless beyond a reasonable doubt"). The contested issues were whether either Campbell or Keigney, or both, committed the acts that caused the victim's death and whether the defendant was a coventurer with one or both of them, sharing the same intent.

The question whether any *Sandstrom* error in this charge concerning intent was harmless error is a Federal constitu-

---

[5]We think that the issue must be contested and that, if it is, *Francis v. Franklin* principles apply even if it is not the only contested issue.

tional one. We shall consider whether the Supreme Court of the United States would apply a harmless error rule in the circumstances to excuse the arguably flawed instruction. It is established that "the harmless error standard of *Chapman* v. *California*, 386 U.S. 18 (1967), applies to jury instructions that violate the principles of [*Sandstrom*] and *Francis* v. *Franklin*." *Rose* v. *Clark*, 478 U.S. 570, 572 (1986).

The Supreme Court has very recently spelled out the standard for determining whether an instruction to apply an unconstitutional presumption did not contribute to the verdict and hence was harmless error. *Yates* v. *Evatt*, 111 S. Ct. 1884, 1893-1894 (1991). "To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. Thus, to say that an instruction to apply an unconstitutional presumption did not contribute to the verdict is to make a judgment about the significance of the presumption to reasonable jurors, when measured against the other evidence considered by those jurors independently of the presumption." *Id.* at 1893.

The Court said that appropriate judicial analysis requires (1) a determination of what evidence the jury were warranted in considering in reaching their verdict based on the instructions the jury received ("Did the jury look at only the predicate facts, or did it consider other evidence bearing on the fact subject to the presumption?") and (2) a weighing of the probative force of that evidence against the probative force of the presumption standing alone to determine "whether the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption." *Id.*

The trial judge defined malice in his charge and, as we have already stated, the fact of the strangulation of the victim with two bathrobe cords provides powerful proof of malice in the killing. Any statement in the second quoted portion of the charge that malice is presumed from the killing was beyond any reasonable doubt inconsequential to the jury's

verdict. Malice in the killing by strangulation was not contested by any defendant at the trial.

We turn to a consideration of the instruction — that a person is presumed to intend to do what he does do — as specifically applied to the case against the defendant. When we do so, any *Sandstrom* error as to the defendant appears immaterial and harmless in all respects. The Commonwealth never claimed that the defendant committed the killing. He never did anything, to the victim or otherwise, that could have caused a reasonable juror, hearing the challenged charge, to presume any contested fact of the Commonwealth's case against the defendant. The question whether the defendant shared the intent of Campbell and Keigney was a very live, important, and seemingly close question for the jury. The challenged instructions, however, had nothing to do with the jury's consideration of that issue as the judge gave that issue to the jury.

When the defendant prevented Carden from moving along the catwalk to the victim's cell about two and one-half hours before the killing and when the defendant leaned over the rail in front of the victim's cell shortly before Keigney and Campbell left the victim's cell at a fast pace and Carden found the victim's body, the defendant intended to do what he did on each occasion, as the challenged charge indicates. The question whether the defendant intended to have happen what Campbell and Keigney did to the victim is a separate question, on which the jury were separately instructed unaffected by any *Sandstrom* and *Francis* v. *Franklin* error.

4. The teaching of *Francis* v. *Franklin* may not permit us to weigh the charge as a whole (except to the extent that a constitutional error is explained away by other language). We have, therefore, not done so. On the other hand, based on the charge in this case, a reasonable juror would not have been likely to have presumed any contested fact against the defendant. To conclude that a reasonable juror *could* have done so, the *Francis* v. *Franklin* standard, by an analysis of ambiguous language ("intend to do what we do do") heard once in the judge's charge would be an extreme position.

Lawyers and judges parse challenged jury instructions, with days to reflect on language that appears before them in writing, to satisfy themselves whether an instruction is or is not constitutionally correct. Lay people hear the judge's words, untuned by training to the implication of the words and unaided by having them in writing. In such situations, the reasonable impression that a jury would have from the judge's instructions as to their fact-finding obligations should be an important factor in deciding the merits of a claim that ambiguous language in a charge creates an impermissible presumption requiring reversal of the conviction. This seems to be what the Supreme Court is saying in *Yates* v. *Evatt*, *supra*.

The judge told the jury that, if they become convinced beyond a reasonable doubt that one of the defendants killed the victim, the jury would have to consider the question of joint enterprise. He told them that the defendant could be guilty of murder only if he intended grievous harm to the victim. "[Y]ou must have made a determination beyond a reasonable doubt that this design and purpose existed in the minds of each of these men." Later the judge said, "[A]s to the defendant Doherty, . . . to be included in the joint enterprise, you must find that he must have shared the common intent." No reasonable juror should have been or, we submit, could have been misled by the challenged instructions to presume any contested fact against the defendant.

The judge did not instruct the jury that Doherty is presumed to intend to do what Campbell and Keigney did do. The arguably defective presumption language can only be read reasonably to apply to what Doherty did do himself. The challenged instruction, therefore, had no bearing on the question whether Doherty shared Campbell's and Keigney's intent. We simply disagree with the assertion to the contrary in the dissenting opinion.

5. The order denying the defendant's 1989 motion for a new trial is affirmed.

*So ordered.*

O'CONNOR, J. (dissenting). As the court notes, *ante* at 97, in *Commonwealth v. Campbell*, 378 Mass. 680, 688-689 (1979), the court characterized the case against Doherty's codefendants as "somewhat thin," and, by comparison, the case against Doherty as presenting "a somewhat closer question." The case against Doherty was based on the theory that, at the time Keigney and Campbell were murdering Perrotta, Doherty was acting as a lookout, "purposefully aiding and abetting them in the commission of the crime, and that by reason thereof he was guilty as a principal." *Id.* at 689. Therefore, as the court properly recognizes, "[t]he question whether the defendant [Doherty] shared the intent of Campbell and Keigney was a very live, important, and seemingly close question for the jury." *Ante* at 104.

With respect to that very· live, important, and close question, the judge instructed the jury that "[w]e are presumed to intend to do what we do do. Otherwise, we wouldn't have done it." That instruction, the court acknowledges, "could be understood in context to say that a person is presumed to have intended to kill if that is the result of what he did do. The words have the potential of being understood to create a presumption, probably a rebuttable one, that runs afoul of *Sandstrom* principles." *Ante* at 101-102. Nevertheless, in spite of its conclusion that the jury was given a constitutionally incorrect instruction with respect to the pivotal issue in the Commonwealth's case against Doherty, the court characterizes the error as harmless, and affirms the order denying Doherty's 1989 motion for a new trial. The court reasons that the presumption instruction was harmless because a reasonable juror would have understood that instruction to mean only that, "[w]hen [Doherty] prevented Carden from moving along the catwalk . . . and when [he] leaned over the rail in front of the victim's cell," Doherty intended to prevent Carden from moving along the catwalk and Doherty intended to lean over the rail. *Ante* at 104. Those are matters about which there could have been no reasonable dispute. According to the court, the faulty instruction would not have gone further. That is, the court says, the instruction would

not have suggested to a reasonable juror that when Doherty, by acting as a lookout, helped Keigney and Campbell to murder Perrotta, he is presumed to have shared their murderous intent. I disagree.

If Doherty's conduct created a presumption that he intended to do what he did, why would not Doherty's aiding and abetting a murder, which the jury would have been entirely justified in finding he did, create a presumption that he intended to do so? In my view, a reasonable juror could well have understood the instruction that "[w]e are presumed to intend to do what we do do" to mean that, if Doherty's conduct aided and abetted a murder, he is presumed to have intended that his conduct would aid and abet a murder. Furthermore, in the absence of such a presumption, the evidence was weak not only with respect to when Keigney and Campbell formed their murderous intention (perhaps it was after they reached Perrotta's cell), but also with respect to what Doherty knew of their intention when he undertook to function as a lookout. The mere fact that Doherty knew that Keigney and Campbell wanted their meeting with Perrotta to be undetected by prison personnel says little, and perhaps not enough to have satisfied the jury, had they been properly instructed, about whether Doherty intended to help Keigney and Campbell do what they ultimately did, that is, murder Perrotta. The error was far from harmless. I would reverse the order denying Doherty a new trial.