COMMONWEALTH vs. ROBERTO MEDINA.

Suffolk. December 9, 1999. - February 17, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Practice, Criminal,* New trial, Instructions to jury, Presumptions and burden
of proof. *Homicide. Malice. Due Process of Law,* Burden of proof. *Error,
Harmless.*

A Superior Court judge did not err in denying a criminal defendant's motion
for a new trial, based on the trial judge's erroneous reference, at the 1975
trial, to a " 'presumption' of malice," where the error could not have
influenced the jury in circumstances in which no view of the evidence
raised a reasonable doubt about the killer's malice: the error was harmless.
[802-812]

INDICTMENT found and returned in the Superior Court on April
10, 1975.

Following review by this court, 380 Mass. 565 (1980), a mo-
tion for a new trial, filed on July 10, 1996, was heard by *Vieri
Volterra,* J.

A request for leave to appeal was considered by *Marshall,* J.

*Jeffrey L. Baler* for the defendant.

*Dean A. Mazzone,* Assistant District Attorney (*John P. Za-
nini,* Assistant District Attorney, with him) for the Com-
monwealth.

LYNCH, J. Convicted of murder in the first degree, the
defendant, Roberto Medina, appeals from the denial of his mo-
tion for a new trial pursuant to Mass. R. Crim. P. 30 (b), 378
Mass. 900 (1979). We affirm.

1. *Prior proceedings.* On October 4, 1975, after being tried
jointly in the Superior Court with Erasmo Soto, the defendant
was convicted of murder in the first degree. On May 5, 1980,
this court affirmed the defendant's conviction.[1] See *Com-*

---

[1]Erasmo Soto was convicted of murder in the second degree. On appeal,
this court reversed Soto's conviction and remanded his case for retrial. See
*Commonwealth* v. *Medina,* 380 Mass. 565, 582 (1980) (*Medina I*).

*monwealth* v. *Medina*, 380 Mass. 565, 566, 580-581 (1980) (*Medina I*). In *Medina I, supra* at 567-570, 573, this court concluded, among other things, that the evidence — portions of which we shall discuss more fully below in connection with the specific issue raised by this present appeal — warranted the jury in finding that the defendant hit the victim numerous times around the head and neck with a baseball bat as she lay on the ground; that the beating was administered with such force that the bat broke into two pieces; and that the primary cause of death was dislocation of the victim's cervical vertebrae resulting from blunt force trauma to her head or neck.[2] This court further decided that the judge's instruction to the jury on the malice element of the crime of murder, in which he referred to a " 'presumption' of malice," was not erroneous when read in the context of his charge as a whole. *Id.* at 577-578.

On July 10, 1996, the defendant moved for a new trial pursuant to rule 30 (b), arguing that subsequent decisions of the United States Supreme Court with respect to burden-shifting presumptions in jury instructions, see *Yates* v. *Evatt*, 500 U.S. 391 (1991); *Francis* v. *Franklin*, 471 U.S. 307 (1985), rendered the judge's instruction on malice at his trial erroneous and prejudicial. A judge in the Superior Court denied the defendant's motion, ruling that *Francis* v. *Franklin, supra*, did not apply because the killer's intent was not a pivotal and contested issue at trial and, alternatively, that any error in the instruction was harmless beyond a reasonable doubt in light of the overwhelming evidence that the assailant intended to kill the victim. The defendant timely filed notice of appeal in the Superior Court and, pursuant to G. L. c. 278, § 33E, sought leave of a single justice of this court to bring his appeal before the full court. The single justice denied this motion, ruling that, although *Francis* v. *Franklin, supra*, did apply and that, in light of its principles, the malice instruction was erroneous, nevertheless the overwhelming evidence of the killer's malice rendered the error harmless beyond a reasonable doubt under *Yates* v. *Evatt, supra*, and, therefore, that this issue, while "new," was not "substantial." See G. L. c. 278, § 33E. The defendant, pro se,

---

[2]There was also evidence that the victim, having been beaten with the bat and thus rendered unconscious, was tied to the back of an automobile with a rope and dragged down the street, and that the defendant, along with his codefendant Soto, had participated in this incident. See *id.* at 573-574. But see *id.* at 581-582.

moved for reconsideration, urging a closer reading of the harmless error analysis mandated by *Yates* v. *Evatt, supra.* The single justice allowed this motion and, on reconsideration, granted the defendant leave to appeal to the full court from the denial of his motion for a new trial on the issue of the malice instruction.

2. *Discussion.* The decision to deny a motion for a new trial lies within the sound discretion of the judge and will not be reversed unless it is manifestly unjust or the trial was infected with prejudicial constitutional error. See *Commonwealth* v. *Nieves,* 429 Mass. 763, 770 (1999), citing *Commonwealth* v. *Hung Tan Vo,* 427 Mass. 464, 467 (1998). We conclude that neither ground for reversal is present here.

It is well established that language in jury instructions of any presumption, whether conclusive or rebuttable, that has the effect of shifting from the prosecution to a defendant the burden of proof on an essential element of the crime charged offends the defendant's Federal constitutional right to due process. See *Sandstrom* v. *Montana,* 442 U.S. 510, 519-520, 523-524 (1979), citing *In re Winship,* 397 U.S. 358, 364 (1970); *Commonwealth* v. *Moreira,* 385 Mass. 792, 794 (1982). Inclusion in the jury charge of other language " 'that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity' because '[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.' " *Commonwealth* v. *Repoza,* 400 Mass. 516, 519, cert. denied, 484 U.S. 935 (1987), quoting *Francis* v. *Franklin, supra* at 322.[3] However, it is also established that, where an instruction is held erroneous on these grounds, a reviewing court may still inquire whether that error was harmless beyond a reasonable doubt. See *Yates* v. *Evatt, supra* at 402-403; *Rose* v. *Clark,* 478 U.S. 570, 578-580 (1986), citing *Chapman* v. *California,* 386 U.S. 18, 23 (1967); *Commonwealth* v. *Doherty,* 411 Mass. 95, 102-103 (1991), cert. denied, 502 U.S. 1094 (1992).

The harmless error analysis mandated by *Yates* v. *Evatt, supra* at 404, entails two distinct steps. First, the reviewing court

---

[3]We have recognized that judicial holdings regarding impermissible burdenshifting language in jury instructions are generally applicable retroactively and, therefore, that *Sandstrom*-type errors may later be claimed by defendants who were tried before the United States Supreme Court decided *Sandstrom* v. *Montana,* 442 U.S. 510 (1979). See *Commonwealth* v. *Repoza,* 400 Mass. 516, 520, cert. denied, 484 U.S. 935 (1987), and cases cited.

must determine what evidence the jury actually considered in reaching their verdict — a determination made by analyzing the language of the instructions given to the jury and applying the customary assumption "that jurors follow instructions and, specifically, that they consider relevant evidence on a point in issue when they are told that they may do so." *Id.* Second, the court must "weigh the probative force of that evidence as against the probative force of the presumption standing alone." *Id.* See *Commonwealth* v. *Doherty, supra* at 103. To conclude that the burden-shifting presumption in the instruction was harmless and did not contribute to the jury's verdict, the evidence considered by the jury in accordance with the instructions must be "so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption." *Yates* v. *Evatt, supra* at 405, citing *Chapman* v. *California, supra* at 24.

Importantly, in performing this analysis, the court must avoid assuming that the jury actually considered all the evidence in the record that bears on the ultimate fact presumed. For if "the terms of [a] presumption[] so narrow the jury's focus as to leave it questionable that a reasonable juror would look to anything but the evidence establishing the predicate fact in order to infer the fact presumed," then it would be improper for the court's harmless error review to encompass the entire evidentiary record; instead, this review should be limited to evidence bearing on the predicating fact from which, according to the terms of the erroneous instruction, the ultimate fact was to be conclusively presumed. *Yates* v. *Evatt, supra* at 405-406. In such a case, a burden-shifting presumption in the instruction would nevertheless be harmless if the facts to be relied on in the presumption "are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact." *Id.* at 406 n.10, quoting *Carella* v. *California*, 491 U.S. 263, 271 (1989) (Scalia, J., concurring). See *Sullivan* v. *Louisiana*, 508 U.S. 275, 280-281 (1993). This is so because, in these circumstances, making the findings would be "functionally equivalent to finding the element to be presumed," and it would thus be " 'beyond a reasonable doubt' . . . that the jury found the facts necessary to support the conviction." *Carella* v. *California, supra* at 271 (Scalia, J., concurring), quoting *Chapman* v. *California, supra* at 24.

At the defendant's trial, the judge instructed the jury, in relevant part, as follows:

"The word, 'malice,' has been used and it has repeatedly been held by this Court that malice in this connection means every unlawful motive that may be inferred from unlawful killing, and when there are no circumstances disclosed tending to show justification or excuse, there is nothing to rebut the presumption of malice. Malice as here used does not necessarily imply ill will toward the person killed, but has the more comprehensive meaning, including any intent to inflict injury upon another without legal excuse or palliation."

A reasonable juror[4] could have understood the instruction to mean the following: if you find that the defendant committed an unlawful killing, that is, a killing without legal excuse or justification, then malice, the intent to kill or to inflict injury without palliation, is to be conclusively presumed. By thus requiring the jury to conclude that the killing was committed with malice if they found the fact of a killing coupled with the absence of a legally cognizable excuse or justification, this instruction relieved the Commonwealth of its burden to prove beyond a reasonable doubt that the killer acted with malice, and could have precluded the jury from considering any evidence, if such existed, that might have mitigated malice. The effect of this presumption was, therefore, to shift to the defendant the burden of disproving malice, an essential element of the crime of murder, in violation of *Sandstrom* v. *Montana, supra,* and *Commonwealth* v. *Moreira,* 385 Mass. 792, 796-797 (1982).[5] See, e.g., *Commonwealth* v. *Sires,* 405 Mass. 598, 599-600

---

[4]We analyze claims of burden-shifting errors in instructions by inquiring whether a "reasonable juror could have used the instruction incorrectly." *Commonwealth* v. *Rosa,* 422 Mass. 18, 27-28 & n.10 (1996). See *Commonwealth* v. *Gagnon, ante* 348, 349 (1999); *Commonwealth* v. *Anderson,* 425 Mass. 685, 688-689 (1997). This standard is more favorable to a defendant than the current Federal standard, articulated in *Estelle* v. *McGuire,* 502 U.S. 62, 72-73 n.4 (1991), and *Boyde* v. *California,* 494 U.S. 370, 380 (1990), which asks whether there is a "reasonable likelihood" that jurors applied the challenged instruction in a way that violates the Federal Constitution. See *Commonwealth* v. *Anderson, supra* at 689 n.8; *Commonwealth* v. *Rosa, supra* at 27 n.10.

[5]The language of presumption in the judge's instruction is distinguishable from that in *Commonwealth* v. *Doherty,* 411 Mass. 95, 100-101 (1991), cert. denied, 502 U.S. 1094 (1992), which this court held was not burden-shifting error. In *Doherty,* the judge, while employing a charge on malice almost identical to that used here, added, "if a defendant . . . intentionally, unlaw-

(1989) (statement in jury instruction that "where the fact of killing is shown and there are no circumstances disclosed tending to show justification or excuse, then there is nothing to rebut the natural presumption of malice" held *Sandstrom*-type error). Although other language in the judge's charge contradicted this presumption, instructing the jury, correctly, that malice "may be inferred from unlawful killing" and that the Commonwealth bears the burden of proving every element of the crime charged beyond a reasonable doubt, this contradictory language did not explain the presumption in a manner that could be held to cure the error.[6] See *Francis* v. *Franklin, supra*; *Commonwealth* v. *Repoza, supra*. We proceed, therefore, to

---

fully killed the deceased, malice is presumed in this case." *Id.* at 100. This court held that, given the state of the evidence, this instruction, while "artless" and perhaps "unclear," was not unconstitutional error: in the absence of evidence warranting a finding of manslaughter and where self-defense is not an issue, an intentional killing that is not excused or justified by law is committed with malice. See *id.* at 101. Here, however, the judge did not charge that a killing found to be intentional and unlawful is presumed to be with malice; rather, he effectively charged the jury that a killing found to be unlawful is presumed to be with malice, that is, intentional and without legal palliation. This is an incorrect statement of our law of murder, which requires that it be proved beyond a reasonable doubt that, inter alia, the killing was *both* unlawful (i.e., without legal excuse or justification, such as accident, self-defense, or defense of another) *and* committed with malice aforethought (i.e., without, for example, heat of passion induced by adequate provocation or sudden combat, or the use of excessive force in self-defense or defense of another). See, e.g., *Commonwealth* v. *Kendrick*, 351 Mass. 203, 212 (1966), citing *Commonwealth* v. *Webster*, 5 Cush. 295, 307-308 (1850); J.R. Nolan & B.R. Henry, Criminal Law, §§ 106, 172, 176A, 201-203 (2d ed. 1988 & Supp. 1999).

[6]Contrary to the motion judge's conclusion, *Francis* v. *Franklin*, 471 U.S. 307 (1985), is applicable to the defendant's claim of burden-shifting error in the jury instructions, even though he did not seriously contest malice at trial. As the single justice reasoned in her initial denial of the defendant's motion, in *Commonwealth* v. *Repoza*, 400 Mass. 516, 517-520, 522 & n.7 (1987), we applied *Francis* principles "in a case where, as here, 'the main contested issue was identification, not intent,' " explaining that because, under our homicide statute, the degree of murder is based on the defendant's intent, "there is always an element of intent for the jury to determine in murder cases in which the defendant does not concede that a conviction of murder in the first or second degree would be warranted if the proper person were prosecuted." However, as we explain, *infra*, that the defendant did not dispute the killer's malice at trial — instead denying that he was the killer and disputing the causal link between the assault on the victim and her death — remains relevant to our assessment whether the error in the malice instruction resulted in any prejudice.

inquire whether this error likely contributed to the jury's verdict or was, rather, harmless beyond a reasonable doubt. See *Rose* v. *Clark*, 487 U.S. 570, 572 (1986); *Commonwealth* v. *Doherty*, *supra* at 102-103.

Applying the first step of the *Yates* analysis, we conclude that reasonable jurors would have understood the malice instruction to limit their consideration of the case to the evidence that bore on the circumstances of the killing, both the manner in which it was committed and whether there was any excuse or justification sufficient to render it lawful, and to preclude their consideration of any further evidence of the defendant's malice. See *Yates* v. *Evatt*, 500 U.S. 391, 404 (1991). Our review of the record on appeal, therefore, is properly limited to the evidence relevant to the predicating fact, the unlawful killing, from which, on the terms of the deficient instruction, the ultimate fact, malice, was to be conclusively presumed.[7] See *id.* at 405-406. However, even thus limiting our review of the evidence, we conclude, on the second step of the *Yates* test, that the jury's verdict was clearly not due to the erroneous malice instruction.

As we have observed, when testing a conclusive presumption whose terms would likely have narrowed a reasonable juror's focus to the evidence bearing on the predicating fact, if the evidence that the jury found sufficient to prove that fact (here, the unlawful killing) is so closely bound up with the ultimate fact presumed (here, malice) that they could not reasonably have found the former without also finding the latter, then the presumption was, beyond a reasonable doubt, harmless to the defendant. *Id.* at 406 n.10. See *Sullivan* v. *Louisiana*, 508 U.S. 275, 280-281 (1993). Here, in finding that a killing had occurred and that there were no circumstances (e.g., accident; use of reasonable force in self-defense or defense of another) to excuse or justify it, the jury must have considered and credited evidence concerning the circumstances and manner in which the victim was assaulted and killed.

Various witnesses, for both the Commonwealth and the defense, testified that the victim lay in the street when the blows that resulted in her death were inflicted. The victim's sister testified that, as she, the victim, and others passed by 26 Walden

---

[7]We do not here consider, for example, evidence, which we considered on direct appeal, that the defendant, armed with a knife, had gone to the apartment of Carmen Rodriguez looking for the victim earlier in the evening of her assault. See *Medina I, supra* at 567, 573.

Street, they were set upon by the defendant and another group, and that the defendant thereupon began hitting the victim with the baseball bat. The defendant, she testified, repeatedly struck the victim with the bat after she had been pushed to the ground, and, as she was being beaten, the bat broke into two pieces. The victim's son testified that, as the victim and her group approached the apartment building at 26 Walden Street, the defendant, wielding a bat, left the building with a number of others, and that, from his vantage point behind an automobile about four yards away, he saw the defendant hit the victim's head once with the bat and the victim fall to the ground.[8] Maribella Muniz, the defendant's own witness, testified that, when the victim swung an axe at her, cutting her in the leg, she hit the victim in the arm with a mop and "rumbl[ed]" with her on the ground, punching her repeatedly in the face until her uncle pulled her off the victim. Thereafter she saw the defendant approach the victim, who was lying on her back on the street or the sidewalk, and hit her once or twice with the bat, first with the whole bat, and then, possibly, with a portion of the bat after it broke in two.

Other testimony regarding physical evidence found at the scene, the victim's condition after the assault, and the likely cause of the victim's death corroborated the testimony of eyewitnesses concerning the nature of the assault on the victim.[9] One of the Boston police officers who responded to the scene discovered the victim lying in the middle of Walden Street, with a "brown reddish sticky substance," which he believed to be blood, in her hair and around her nose and eyes. Not far from where the victim lay, police also recovered a baseball bat broken in two, and stained with what appeared to be blood. Stains on the victim's jacket and on both portions of the bat tested positive for the presence of human blood. Dr. Clyde A. Lindquist, who treated the victim at the hospital, testified that the "immediate" cause of her death was spinal cord shock resulting from dislocation of the cervical vertebrae. Dr. Leonard Atkins,

---

[8]The victim's son also testified that the defendant drove the automobile that was involved in dragging the victim's body, and that the defendant actively participated in this further assault.

[9]We properly review evidence presented at trial concerning the cause of the victim's death, as such evidence is probative of the predicate fact that there was a "killing" and that it was "unlawful," see J.R. Nolan & B.R. Henry, Criminal Law, *supra* at § 172, and would have been considered by a rational juror under the terms of the instruction in question.

associate medical examiner for Suffolk County, who performed the autopsy, concurred with Dr. Lindquist's opinion concerning the primary cause of death, and testified that this injury was causally linked to blunt force trauma to the victim's head or neck. Dr. Donald Green, a neurologist testifying for the defense as an expert witness, opined that the cause of the victim's death was bronchial pneumonia and meningitis, but, in response to a question by the judge, stated that he had no opinion as to whether these causes were secondary to blunt force trauma.

It follows from this evidence that the jury found that the unlawful killing occurred as the victim was lying in the street, incapacitated, when her assailant struck her multiple times with a baseball bat in the area of her head and neck with sufficient force to break the bat in two and to inflict the injuries that were the primary cause of her death. These facts overwhelmingly demonstrate that the victim's assailant acted with malice.[10] See, e.g., Commonwealth v. James, 427 Mass. 312, 313, 317 (1998) (where defendant hit victim's head with baseball bat as he lay on ground and made no attempt to fight, evidence supported conviction of murder in first degree and no reduction in verdict to murder in second degree or manslaughter warranted). In light of the evidence regarding the nature of the assault on the victim and her resulting injuries, the jury's finding the predicate fact of an unlawful killing was the functional equivalent of their finding the ultimate fact to be presumed, malice. See Sullivan v. Louisiana, 508 U.S. 275, 280-281 (1993); Yates v. Evatt, 500 U.S. 391, 406 n.10 (1991). See also Commonwealth v. Doherty, 411 Mass. 95, 102, 103 (1991) (mandatory presumption of malice in instruction harmless error where manner of killing "demonstrated conclusively that whoever committed [the] acts did so intentionally" and "provide[d] powerful proof of malice in the killing"); Bembury v. Butler, 968 F.2d 1399, 1402-1404 (1992) (same conclusion where record reviewed on appeal contained "ample evidence" that murder was committed with malice); Moore v. Ponte, 924 F. Supp. 1281, 1297 (D. Mass. 1996), aff'd, 186 F.3d 26 (1st Cir.), cert. denied, 528 U.S. 1053 (1999) (same conclusion where "it was clear [from evidence reviewed on appeal] that whoever killed the victim did so with

_____

[10]Alternatively, if the jury disbelieved the testimony that the defendant struck the victim with the bat and based their verdict instead on a finding that e defendant had assaulted the victim with an automobile as she lay capacitated in the street, this conclusion is unchanged.

malice, and thus the only real issue at trial was the identity of the killer").

The defendant argues, however, that the jury, instructed to presume malice once having found an unlawful killing, would not have proceeded to consider whether there was any evidence that would suffice to mitigate malice, and that the Commonwealth was thereby relieved of its burden to prove the absence of mitigation beyond a reasonable doubt. Specifically, he argues that the jury were precluded from considering evidence that the defendant was a participant in a fight and that he may have hit the victim in defense of Maribella Muniz, whom the victim allegedly struck with an axe. Hence the jury, he claims, might have convicted him of murder when, in reality, this evidence might have warranted a reasonable doubt as to the killer's malice and, therefore, a verdict of manslaughter would have resulted. We conclude, however, that the defendant was not prejudiced, because the evidence, even when viewed in the light most favorable to the defendant, did not suffice to raise a reasonable doubt as to the killer's malice. See *Commonwealth v. Reed*, 427 Mass. 100, 102-103 (1998) (self-defense); *Commonwealth v. Fluker*, 377 Mass. 123, 127, 130-131 (1979) (sudden provocation).[11]

Although there was testimony that the victim's boy friend assaulted the defendant with a bat, that another woman, Lydia Perez, assaulted him with a bat and her hands, and that the victim assaulted Maribella Muniz with an axe, there was no

---

[11]Although the defendant at trial denied having assaulted the victim, for purposes of this argument on appeal he does not contest the jury's finding that he was the assailant. We therefore "summarize[] the evidence in a light most favorable to the defendant, consistent with his having killed the victim." *Commonwealth v. Pitts*, 403 Mass. 665, 667 n.2 (1989), citing *Commonwealth v. Maskell*, 403 Mass. 111, 116 (1989); *Commonwealth v. Garabedian*, 399 Mass. 304, 314 (1987).

The judge gave the jury minimal instruction on manslaughter, defining it as unlawful killing without malice and stating that it was within the jury's "jurisdiction or . . . authority" to find the defendant guilty of this lesser crime (or of murder in the second degree, or of assault and battery by means of a dangerous weapon), but without elaborating on what circumstances would suffice to mitigate malice. However, because no view of the evidence entitled the defendant to an instruction on adequate provocation or the use of excessive force in self-defense or defense of another as mitigating circumstances, whatever instruction the judge gave on manslaughter was more favorable to the defendant than required. See *Commonwealth v. Torres*, 420 Mass. 479, 492 (1995); *Commonwealth v. Curtis*, 417 Mass. 619, 632 (1994).

evidence that the victim had directly threatened or assaulted the defendant prior to his having struck her with a bat, or that, when he hit her multiple times as she lay on her back on the ground, she fought with or struggled against him. This evidence does not warrant an inference of adequate provocation, because there is nothing to suggest that the defendant, when assaulting the victim as she lay defenseless on the ground, confronted circumstances that, objectively speaking, would "likely . . . produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint." *Commonwealth* v. *Curtis*, 417 Mass. 619, 629 (1994), quoting *Commonwealth* v. *Walden*, 380 Mass. 724, 728 (1980). Moreover, there is no indication whatever (least of all from the defendant himself, who denied ever striking the victim) that the defendant actually, *subjectively* experienced this impassioned state of mind. *Id.* See, e.g., *Commonwealth* v. *Pitts*, 403 Mass. 665, 667-668 & n.2 (1989) (manslaughter instruction not warranted where defendant testified that he did not kill victim and there was no evidence that he subjectively experienced heat of passion); *Commonwealth* v. *Zukoski*, 370 Mass. 23, 28-29 (1976) (no provocation instruction warranted where victim swore and threw glass at defendant; threat from thrown glass had passed before defendant struck victim); *Commonwealth* v. *Holmes*, 32 Mass. App. Ct. 906, 908 (1992) (no manslaughter instruction warranted where defendant stabbed victim from behind as victim fought with defendant's companion and no evidence that defendant himself was provoked by or faced sudden combat with victim).

Furthermore, even if we assume that the evidence would warrant a rational trier of fact in finding that the defendant was prompted to hit the victim in defense of Maribella Muniz, see *Commonwealth* v. *Johnson*, 412 Mass. 368, 372-373 (1992) (use of excessive force in defense of third person may mitigate degree of guilt for homicide), nevertheless testimony, by both defense and prosecution witnesses, that the defendant hit the victim multiple times after she was on the ground, incapacitated, and no longer involved in a fight with Muniz, precludes a reasonable doubt whether the defendant "availed himself of all proper means to avoid physical combat before resorting to the use of deadly force," *Commonwealth* v. *Reed*, *supra* at 102, quoting *Commonwealth* v. *Curtis*, *supra* at 632, let alone that he reasonably and actually feared that Muniz was any longer "'in

imminent danger of death or serious bodily harm" from the victim. *Commonwealth v. Reed, supra* at 103. Once the victim had fallen to the ground and had been beaten into submission by Muniz, she no longer presented a threat to anyone, and the defendant at that point had the opportunity to retreat without further violence, but did not. See, e.g., *Commonwealth v. Nunes, ante* 1, 5 (1999) (evidence did not raise issue of self-defense where, after victim had been disarmed, any right to use self-defense terminated). In short, as the evidence did not suffice to raise a reasonable doubt as to the killer's malice in inflicting the fatal blows to the victim, the defendant could not have been prejudiced by the jury's possible failure, due to the burden-shifting language in the malice instruction, to consider evidence of mitigating circumstances.

Finally, it is relevant to our determining whether any prejudice resulted from the defective malice instruction that the defendant at trial did not seriously contest the presence of malice in the killing. In his own testimony, the defendant did not dispute that the killer had acted with malice, but instead testified that he had not hit the victim with the baseball bat or participated in the assault with the automobile, having left the scene of the fight and returned to the apartment prior to these incidents. Moreover, in closing argument, defendant's trial counsel, while referring to a fight just prior to the killing and recalling testimony that the victim had initiated the altercation by coming to the apartment door armed with an axe, did not argue that the evidence warranted an inference of adequate provocation or excessive force in self-defense that would have mitigated the killer's malice, but instead that the defendant, while he had fought with others at the scene, had been falsely identified as the victim's assailant and, alternatively, that proof was lacking of a causal link between the defendant's assault on the victim, with either the bat or the automobile, and her death. Given this trial strategy, which did not advance mitigation of malice as a defense to the murder charge but focused instead on issues of identity and causation, it is clear that an erroneous instruction that precluded the jury's considering evidence of mitigating circumstances could not have prejudiced the defendant. See, e.g., *Commonwealth v. Gagnon, ante* 348, 350 (1999) (where identity of killer is only live issue at trial, any error in malice instruction is not prejudicial because defendant's state of mind is not in dispute); *Bembury v. Butler*, 968 F.2d

1399, 1403 (1st Cir. 1992) (erroneous presumption on malice harmless where defendant did not dispute Commonwealth's version of events leading to victim's death but instead denied he was killer, and record reviewed on appeal showed "beyond a reasonable doubt that a reasonable jury could have found that the shooting was committed with malice"); *Moore* v. *Ponte*, 924 F. Supp. 1281, 1297 (D. Mass. 1996), aff'd, 186 F.3d 26 (1st Cir.), cert. denied, 528 U.S. 1053 (1999) (burden-shifting presumption in instruction did not contribute to guilty verdict on murder charge where "it was clear that whoever killed the victim did so with malice, and the only real issue at trial was the identity of the killer").

3. *Conclusion.* We conclude that the language of presumption in the malice instruction, although error, was harmless beyond a reasonable doubt and that the motion judge did not abuse his discretion in denying the defendant's motion for a new trial.

*Order denying motion for a new trial affirmed.*