Commonwealth *vs.* Ronnie M. Harris.

Suffolk. January 3, 1978. — August 24, 1978.

Present: Hennessey, C.J., Quirico, Braucher, Kaplan, & Abrams, JJ.

*Homicide. Self-Defense. Evidence,* Spontaneous utterance, Presumptions and burden of proof. *Practice, Criminal,* Instructions to jury.

At a criminal trial, a statement made by an unidentified bystander immediately before the incident on which the indictments were based was admissible as a statement attending the commission of the crime. [206–207]

At a murder trial, there was no error in the judge's instructions on the subject of self-defense nor was there error in his refusal to give additional instructions requested by the defendant. [208–209]

At a murder trial, the judge instructed the jury correctly with respect to the burden of proof on the issue of self-defense. [209–211]

INDICTMENTS found and returned in the Superior Court on May 17, 1974.

The cases were tried before *R. Sullivan,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Harvey M. Pullman* for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J. These are the defendant's appeals, pursuant to G. L. c. 278, §§ 33A-33G, from his convictions on two indictments returned against him by the grand jury for Suffolk County on May 17, 1974, for crimes allegedly committed on March 22, 1974, in Boston. The first indictment charges the defendant with the murder of Mack Clark (Clark), and the second with an assault on Donald V. Haynes (Haynes) with intent to murder him, the defendant being armed at the time with a dangerous weapon, a handgun. The jury returned verdicts of guilty on

both indictments, the murder conviction being in the second degree. The defendant was sentenced to the Massachusetts Correctional Institution at Walpole for life for the murder, and for a concurrent term of eight to ten years for the assault.[1]

The defendant argues two alleged errors which are based on exceptions saved at the trial. One is the admission in evidence of a statement made by someone other than himself immediately before the incident on which the indictments are based. The second relates to the trial judge's instructions to the jury on the subject of self-defense. Additionally, the defendant asks that this court, in the exercise of its power under G. L. c. 278, § 33E, vacate the verdict of guilty of murder in the second degree and order a new trial on that indictment, or, in the alternative, that it reduce the verdict to guilty of manslaughter. He contends both that the evidence is insufficient to support the verdict of murder in the second degree, and that the verdict is against the weight of the evidence.[2]

We hold that there was no error, and that there is no basis to modify the jury verdicts or to grant the defendant any other relief under G. L. c. 278, § 33E.

---

[1] An indictment charging a codefendant with being an accessory after the fact to the alleged murder was tried at the same trial and also resulted in a verdict of guilty. The appeal of that defendant was disposed of by the Appeals Court in Commonwealth v. Mormando, 5 Mass. App. Ct. 815 (1977).

The appeal of the present defendant from his conviction for assault on Haynes was originally entered in the Appeals Court and was later transferred to this court for direct appellate review on the application of the defendant. G. L. c. 211A, § 10 (A).

[2] We note that the defendant's trial counsel moved for directed verdicts at the close of the Commonwealth's case, but waived argument thereon. The motions were denied in open court by the judge's statement "Motion denied, and your rights saved." These motions were not renewed at the close of all the evidence. The defendant's present counsel, who was not trial counsel, argues the insufficiency of the evidence only as to the indictment charging murder, and only as part of his request for relief under G. L. c. 278, § 33E.

We summarize the evidence to the extent necessary for the disposition of these appeals. Prosecution witnesses testified that about March 18, 1974, Haynes purchased four bags of heroin from the defendant for thirty-six dollars. He had purchased drugs from the defendant on numerous occasions. About March 20 the defendant was near the Dudley Street station in the Roxbury area of Boston and had some bags of heroin in his possession. Haynes approached him and complained about the quality of the heroin which the defendant had sold him several days earlier, and asked for the return of his money. The defendant responded that the heroin was good and that he had no money. A scuffle followed during which Haynes took seven bags of heroin away from the defendant.

On March 22, 1974, from about 4 P.M. and until some time later, Haynes, Clark, the latter's brother Stephen Clark, and two or three other friends of Haynes were standing on the sidewalk outside a tavern at the corner of Northampton and Washington Streets. About 4:10 P.M. the defendant drove past the corner in a white Pontiac Grand Prix automobile which was later determined to belong to the codefendant Mormando. The defendant stopped the car a short distance beyond the corner, got out, walked back to the corner, then returned to the car and drove away. He had no conversation with Haynes at that time. About 4:15 or 4:20 P.M. the Pontiac automobile, with three persons in it, again passed the corner. It stopped beyond the tavern. Shortly thereafter the defendant and a young man walked back toward the corner. The second man has been identified as Jerome McGowan, who shared an apartment with Mormando.

When the defendant and McGowan reached the corner Haynes was talking to Clark. The defendant approached Haynes and told him that McGowan, who was now carrying an axe handle, wanted to talk to him. Haynes turned to McGowan who without speaking started to walk across Northampton Street. When Haynes turned back toward the defendant he heard someone behind him say: "Shoot

that m . . . . . - f . . . . .!" At that moment the defendant reached behind his back, drew a firearm, lunged at Haynes, and fired a shot. Haynes was hit by the pistol but not by the shot, which instead passed through a coat which he was wearing at the time. The defendant then turned toward Clark, who was seven or eight feet away, and fired a shot at him which resulted in his death. The defendant fled toward the Pontiac automobile, with Haynes and others in pursuit. The codefendant Mormando, who had remained in the Pontiac automobile, picked the defendant up and left the scene. Mormando was apprehended within several days through information given to the police about the Pontiac automobile. The defendant was traced to the Mormando apartment, where he had changed his blood-stained shirt for one given him by Mormando. The defendant left the apartment before the police arrived and fled to New York. He was later arrested there, and was returned to Boston on September 6, 1974.

The defendant's somewhat different testimony of what happened is as follows. He was a drug user, but had not sold any drugs to Haynes. He had directed Haynes to someone else for the purchase of heroin. Several days before March 22, Haynes and Clark, accompanied by three other men, demanded drugs from him. He told them that he had fifteen bags of heroin which he had just purchased for fifty dollars for use by himself and another person. He refused to give them any of the drugs, whereon Clark held a knife to his neck and took eight bags. Haynes then demanded the rest of the drugs but the defendant refused to give them to him. A scuffle followed during which Clark gave Haynes the knife. In the end the defendant was forced to give the rest of the drugs to Haynes.

About 4 P.M., or shortly thereafter, on March 22, Mormando drove the defendant and McGowan to a point a little beyond the corner of Northampton and Washington and stopped to let McGowan out. They then drove a short

distance further and the defendant got out. Mormando parked there and remained in the car. After making some intermediate stops the defendant walked toward the corner. On his way he met John Dixon. Dixon told him that Haynes and Clark were at the corner and that he had heard them say that they were going to "get" the defendant. Dixon pulled out a knife and offered it to the defendant, but he refused it. Dixon then offered the defendant a gun, and he also refused that. Nevertheless, Dixon stuck the gun in the defendant's sweater. The defendant then met McGowan and as they walked toward the corner he saw McGowan reach into a doorway and pull out a stick which he carried with him.

When the defendant and McGowan arrived at the corner, Haynes, Clark, Clark's brother Stephen, and a number of other persons were there. Haynes approached the defendant from behind, put his arm around him, and asked for drugs. The defendant attempted to get away from him. McGowan approached, and Haynes asked him what he was going to do with the stick, and McGowan said "nothing." Clark came over and asked McGowan the same question and got the same answer. The stick was an axe handle. Clark tried to take the stick away from McGowan. Haynes then, while continuing to demand drugs, reached into his pocket and pulled out a knife and held it against the defendant's neck. He tried to stab the defendant but another person intervened. The defendant's ear was cut. At this point the defendant pulled the gun out of his pocket and, as the scuffle continued, fell to the ground. From that position he saw Haynes coming at him. He fired the gun at Haynes and Haynes fell down. Then lying on his back the defendant saw Clark coming "over" him with a knife and shot him. He fled down the street, was picked up by Mormando, and was driven away.

Of the many persons who were at or near the corner when the alleged crimes were committed, three gave testimony which supported the version of the victim

Haynes, and two gave testimony which supported the version of the defendant.

It is obvious from the above summary of the evidence that the defendant admits that he shot at Haynes and that he shot and killed Clark. He contends, however, that his conduct was legally justified because he was acting in self-defense when he was attacked by Haynes and Clark. It is apparent from the verdicts that the jury did not believe the evidence presented by the defendant and his witnesses relating to self-defense, but rather believed the evidence of the Commonwealth.

We now consider the several grounds on which the defendant seeks relief from this court.

1. *Evidentiary question.* Shortly before the shooting that resulted in the charges in these cases, Haynes was facing McGowan and talking with him. McGowan left and started to walk across the street. Haynes then turned around and faced the defendant. Haynes testified, over the defendant's objection and exception, that he then heard someone behind him say: "Shoot that m . . . . . - f . . . . .!" Testimony indicated that it was at about this time that the defendant shot at Haynes and missed him, and then shot and killed Clark. The person who spoke the words was not identified in subsequent testimony, and the statement was not attributed to the defendant.

The trial judge apparently admitted the statement as part of the "res gestae." The defendant argues here that the statement was not admissible under a theory of "res gestae" because it was neither made contemporaneously with nor immediately after the shooting, but before it. He also contends that the evidence does not come within the "spontaneous utterances" exception to the hearsay rule, citing and quoting from 6 J. Wigmore, Evidence § 1745 (Chadbourn rev. 1976). We need not pursue either argument because we conclude that the evidence was properly admitted regardless of whether the reason stated by the judge was correct. See *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 221-224 (1973).

We have held on numerous occasions that evidence of statements and other circumstances attending the commission of a crime is admissible to aid the jury by giving them the benefit of the complete occurrence. In *Commonwealth* v. *Simpson*, 300 Mass. 45, 50, cert. denied, 304 U.S. 565 (1938), we said: "A remark heard by a party and which is an occurrence closely connected with and perhaps affecting conduct, the nature of which is in issue, may be put in evidence as a part of matter under investigation. [Citation omitted.] Ordinarily in the trial of a criminal case, the Commonwealth may introduce evidence tending to prove the circumstances under which the crime charged was committed. It may show the whole transaction of which the crime was a part. 'Evidence of the attendant circumstances may aid the jury in reaching a verdict by giving them the complete picture. *Hartnett* v. *McMahan*, 168 Mass. 3, 4 [1897].' *Commonwealth* v. *Durkin*, 257 Mass. 426 [1926]." *Commonwealth* v. *Murphy*, 356 Mass. 604, 609 (1970). *Commonwealth* v. *Hackett*, 2 Allen. 136, 138-140 (1861). See *Reardon* v. *Marston*, 310 Mass. 461, 464-465 (1941). The statement made by the unidentified bystander in the present case qualifies for admission under this rule, and was therefore properly admitted.[3]

---

[3] In view of the fact that the jury returned a verdict of guilty of murder in the second degree we need not consider the argument of the defendant that the admission of the statement in question tended to prove that the defendant's killing of Clark was with deliberately premeditated malice aforethought. It is equally unnecessary for us to consider whether the statement was properly admitted on evidence which would warrant the jury to infer that the statement was made by McGowan and that he and the defendant were acting in concert or engaged in a common enterprise at the time, one being armed with an axe handle and the other with a firearm. If the jury inferred these facts the statement might be admissible against the defendant notwithstanding the fact that McGowan was not indicted as a result of the encounter. *Commonwealth* v. *Galvin*, 310 Mass. 733, 746 (1942). *Commonwealth* v. *Scott*, 123 Mass. 222, 236 (1877). See *Commonwealth* v. *Hogg*, 365 Mass. 290, 295-296 (1974); *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 309-310 (1971), cert. denied sub nom. *Farrell*

2. *Instructions to jury on self-defense.* The judge's instructions to the jury on the subject of self-defense were rather extensive, occupying about ten pages in the trial transcript. At the close of the instructions the defendant asked the judge to instruct the jury further on two points. He asked that the judge charge "that Harris had just as much right on the corner there that afternoon as anybody else," and that the judge give the jury "further explanation as to at what point was the defendant to have availed himself of the opportunity to escape or avoid combat." The judge did charge the jurors to consider all the conditions existing at the time and place of the shooting in deciding (a) whether the defendant "had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm . . . from which danger he could save himself only by using deadly force against his assailant," (b) whether "he, the defendant, had availed himself of all proper means to avoid physical contact before resorting himself to defense by the use of a deadly force or a deadly weapon," and (c) whether the force used by the defendant was reasonable or was excessive in all the circumstances of this case.

The judge was not required to instruct the jury in the precise language requested by the defendant. It is enough if the instructions were otherwise adequate, although not making specific reference to the particular facts which the defendant asked the judge to state or emphasize. *Commonwealth* v. *Edmonds*, 365 Mass. 496, 506 (1974). The judge is neither allowed nor required either to stress or argue a particular side on an issue to the jury.

The law of self-defense in this Commonwealth has been the subject of numerous recent decisions by this court. *Commonwealth* v. *Barton*, 367 Mass. 515 (1975). *Common-*

v. *Massachusetts,* 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U. S. 914 (1972); *Commonwealth* v. *Kiernan,* 348 Mass. 29, 58-59 (1964), cert. denied sub nom. *Gordon* v. *Massachusetts,* 380 U.S. 913 (1965).

*wealth* v. *Shaffer,* 367 Mass. 508 (1975). *Commonwealth* v. *DeCaro,* 359 Mass. 388, 390 (1971). *Commonwealth* v. *Leate,* 352 Mass. 452, 457 (1967). *Commonwealth* v. *Kendrick,* 351 Mass. 203, 210-212 (1966). *Commonwealth* v. *Hartford,* 346 Mass. 482, 490 (1963). *Commonwealth* v. *Houston,* 332 Mass. 687, 690 (1955). It is not necessary for us to continue to repeat the underlying principles of law stated or reviewed in the cases cited above. We are satisfied that the judge's instructions to the jury on the subject of self-defense in the present cases were in accord with the law as settled by these cases. It was not error for the judge to refuse to give the additional instructions requested by the defendant.

3. *Burden of proof on issue of self-defense.* The defendant admits that he shot at Haynes and missed him, and that he shot at Clark and killed him. The Commonwealth contends that these acts were unlawful, and the defendant contends that they were lawful because they were done in self-defense. At this point we consider the question whether the judge instructed the jury correctly as to which party has the burden of proof on the issue of self-defense.

In *Commonwealth* v. *Rodriguez,* 370 Mass. 684, 688, 692 (1976), we held that in all cases tried or retried after the date of that decision, July 15, 1976, "the Commonwealth must, as matter of due process, prove beyond a reasonable doubt that the defendant did not act in self-defense." The holding was based in part on the decision in *Mullaney* v. *Wilbur,* 421 U.S. 684, released on June 9, 1975, which was given retroactive effect by *Hankerson* v. *North Carolina,* 432 U.S. 233 (1977). Notwithstanding that the trial of the present cases occurred prior to our decision in the *Rodriguez* case, and notwithstanding further that the defendant saved no exception and assigned no error relating to the judge's instruction on the burden of proof on the issue of self-defense, we are considering this part of the instructions because of our more recent decision in *Commonwealth* v. *Stokes,* 374 Mass. 583, 587-592 (1978). We there-

fore examine the judge's instructions in their entirety to determine whether the constitutional requirements have been met.

The judge instructed the jury that on the murder indictment they could return one of four possible verdicts, viz., not guilty, guilty of murder in the first degree, guilty of murder in the second degree, or guilty of manslaughter. As to manslaughter he instructed them that if, in the first instance, the defendant was entitled to use reasonable force in self-defense but in his use of the gun he used more force than was reasonably necessary, he could be found guilty of manslaughter in killing Clark.[4]

The judge's general instructions to the jury on the burden of proof included the statement that the Commonwealth "must prove beyond a reasonable doubt all of the elements which make up the crime with which the defendants are charged." Thereafter in instructing the jury on the specific issues of self-defense, he told the jury: "Self-defense, in the eyes of the law, is a defense, and is held in the eyes of the law as an excuse and justification for assault and even in certain circumstances as an excuse or justification for the killing of another. Naturally, there are requirements of law which surround the defense of self-defense. But the defendant does not, as a

---

[4] The judge further charged the jury on the elements of the crime of voluntary manslaughter where a homicide is committed in a sudden transport of passion or heat of blood, on reasonable provocation and without malice, or on sudden combat. *Commonwealth v. Zukoski*, 370 Mass. 23, 28 (1976), and cases cited. *Commonwealth v. Campbell*, 352 Mass. 387, 396-398 (1967). These further instructions were gratuitous and unnecessary because the case was not tried on that theory. *Commonwealth v. Maguire*, 375 Mass. 768, 773-774 (1978). From beginning to end the defendant's case was tried on the sole theory of justification by reason of self-defense. The defendant's counsel put the issue in the following language in his final argument to the jury: "The question you will have to take with you, and the question you will decide when you go to the jury room, is whether or not at the time of the shooting of Mack Clark young Harris acted in self-defense." Our review is therefore limited to the only theory on which the case was tried. See *Commonwealth v. Johnson*, 374 Mass. 453, 465 (1978).

result of adopting the defense of self-defense, he does not have the burden of proving self-defense. In short, the burden of proof does not shift from the prosecution because the defendant has adopted the defense of self-defense. The defendant does not have the burden of proof. It has not shifted; it remains as always with the prosecution."

We conclude that these instructions with respect to the burden of proof on the issue of self-defense did not violate the defendant's constitutional rights.

4. *Review under G. L. c. 278, § 33E.* On the indictment charging the defendant with murder we have considered the entire case on both the law and the evidence as required by G. L. c. 278, § 33E, and we conclude that the verdict of guilty of murder in the second degree was not against the law nor against the evidence and that the interests of justice require neither a new trial nor the entry of a lesser degree of guilt than that found by the jury.

*Judgments affirmed.*