HARRIS, COMMONWEALTH vs., 101 Mass. App. Ct. 308

 
 COMMONWEALTH vs. RONNIE M. HARRIS.

101 Mass. App. Ct. 308
 October 4, 2021 - June 29, 2022

Court Below: Superior Court, Suffolk County
Present: Sullivan, Sacks, & Shin, JJ.

 

No. 20-P-755.

Homicide. Malice. Practice, Criminal, New trial, Instructions to jury, Presumptions and burden of proof. Error, Harmless.

A Superior Court judge erred in denying a criminal defendant's motion for a new trial, in which the defendant, who had been convicted of murder in the second degree, contended that the jury instructions at his trial included an unconstitutional mandatory presumption of malice, where the jury could have reasonably understood a portion of the jury charge (i.e., "malice is implied to every cruel act"), taken by itself, to create a presumption that relieved the Commonwealth of its burden of proving malice; where nothing in the other instructions explained and negated the effect of that language; and where, given that the trial judge did not instruct that malice required the absence of mitigating circumstances, or that malice required more than merely a cruel act, the error was not harmless beyond a reasonable doubt. [311-325]

Indictments found and returned in the Superior Court on May 17, 1974. 

 The cases were tried before R. Sullivan, J., and following review by the Supreme Judicial Court, 376 Mass. 201 (1978), a motion for a new trial, filed on August 1, 2019, was considered by Christine M. Roach, J. 

 Inna Landsman for the defendant.

 Benjamin Shorey, Assistant District Attorney, for the Commonwealth.

 SACKS, J. The defendant, convicted in 1975 of murder in the second degree and armed assault with intent to murder, appeals from an order denying his first motion for a new trial, filed in 2019, with respect to the murder conviction. He contends that the jury instructions included an unconstitutional mandatory presumption of malice, in violation of Sandstrom v. Montana, 442 U.S. 510 (1979). We conclude that the jury instructions created a presumption of malice, that the language was not explained and 

 Page 309 

corrected by other language in the instructions, and that this error was not harmless beyond a reasonable doubt, entitling the defendant to a new trial. [Note 1]

 Background. The underlying facts are largely set forth in Commonwealth v. Harris, 376 Mass. 201 (1978), which affirmed the defendant's convictions on a direct appeal that included plenary review under G. L. c. 278, § 33E, as then in effect. [Note 2] For present purposes it suffices to say that in mid-March of 1974, the defendant, then nineteen years old, and one Donald Haynes had a dispute involving a purchase of heroin, of which both were users. See Harris, supra at 203. On that occasion, Haynes forcibly took heroin from the defendant. See id. Whether Haynes used a knife to do so, and whether Haynes's friend Mack Clark, the eventual homicide victim, was present at the time, were disputed. 

 The fatal incident occurred a few days later, on March 22, 1974, on a street corner in Boston, when the defendant and a friend encountered a group that included Haynes and Clark. Words were exchanged. Id. According to Haynes and other prosecution witnesses, the defendant drew a gun, lunged at Haynes, and fired a shot that passed through Haynes's coat without hitting him. Id. at 204. The defendant then turned to Clark, who was seven or eight feet away, and fired a single shot at him, causing his death. See id. The defendant then fled. Id.

 The defendant and other defense witnesses, in contrast, testified that Haynes approached the defendant from behind, demanded drugs, held a knife to the defendant's neck, tried to stab him, and cut his ear. See id. at 205-206. In the ensuing scuffle, the defendant 

 Page 310 

fell down, saw Haynes coming at him with the knife, pulled a gun out of his pocket, and fired at Haynes. The defendant, still on the ground, then saw Clark coming at him with a knife and so shot Clark, fatally, before fleeing. See id.

 The defendant was indicted for murder in the first degree of Clark and armed assault with intent to murder Haynes. [Note 3] Id. at 201. At the trial in March of 1975, the Commonwealth's theory was that the defendant went to the street corner to attack Haynes, in retaliation for Haynes previously having robbed the defendant of heroin, and then shot Clark. The defendant's theory was self-defense: he went to the street corner with no intention of hurting anyone; [Note 4] when Haynes demanded drugs and attacked him with a knife, he shot at Haynes; and when Clark came "'over' him with a knife," he shot Clark in self-defense. Id. at 205.

 On the murder charge, the judge instructed the jury on murder in the first degree on a theory of deliberate premeditation, murder in the second degree, manslaughter on theories of excessive force in self-defense and by heat of passion on reasonable provocation or on sudden combat, and self-defense. The judge's instructions on malice included the statement, "Malice, as I have said, is implied to every cruel act," but did not define or explain the word "cruel." The jury returned verdicts of guilty of murder in the second degree as to Clark and armed assault with intent to murder as to Haynes. The defendant was sentenced to life in prison, with a concurrent sentence of not more than ten years or less than eight years for the armed assault conviction. 

 In 1989, the defendant was paroled; he remained at liberty for twenty-nine years. He was returned to custody in August of 2018 based on alleged parole violations and in 2019 was convicted of indecent assault and battery on a child under the age of fourteen, for which he received a two-year house of correction sentence. On appeal, that conviction was affirmed. Commonwealth v. Harris, 100 Mass. App. Ct. 1123 (2022). 

 Also in 2019, the defendant filed his first motion for a new trial in this case, directed only to the murder charge. He asserted that 

 Page 311 

the jury instructions included an unconstitutional mandatory presumption of malice, misdescribed the beyond a reasonable doubt standard, and shifted the burden to him to prove reasonable provocation as a mitigating circumstance reducing murder to manslaughter. He also asserted that trial counsel was ineffective in failing to argue reasonable provocation. 

 A motion judge, who was not the trial judge, denied the motion without an evidentiary hearing. [Note 5] She concluded that the defendant's various challenges to the jury instructions were barred by estoppel based on the decision on his direct appeal. She rejected his ineffective assistance claim, concluding that trial counsel's strategy was not manifestly unreasonable. This appeal followed.

 Discussion. A judge "may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). On appeal from a ruling on a motion for a new trial, we review for "a significant error of law or other abuse of discretion." Commonwealth v. Grace, 397 Mass. 303, 307 (1986). The passage of many years, even decades, between a trial and a motion for a new trial "does not invalidate" the motion, although "[t]he desirability of finality in the adjudication of cases and the Commonwealth's interest in the fair and efficient administration of justice are factors to be considered along with the ever-present concern that justice not miscarry for the defendant." Commonwealth v. Wheeler, 52 Mass. App. Ct. 631, 636-637 (2001), quoting Commonwealth v. Curtis, 417 Mass. 619, 623 (1994). "Although the public's interest in the finality of criminal convictions is weighty, it is not always paramount." Commonwealth v. Randolph, 438 Mass. 290, 294 (2002). "In our system the motion for a new trial, which can be made at any time even decades after the initial adjudication, responds to this need." Commonwealth v. Amirault, 424 Mass. 618, 637 (1997). See Commonwealth v. Watkins (No. 1), 486 Mass. 801, 805 n.7 (2021) (declining to treat 1976 murder conviction as "'firmly settled' due to the passage of time").

 1. Mandatory presumption of malice. The defendant argues that the trial judge, by instructing the jury that "[m]alice . . . is implied 

 Page 312 

to every cruel act," [Note 6] established a mandatory presumption of malice in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, as construed in Sandstrom, 442 U.S. at 523-524. [Note 7] "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts." Francis v. Franklin, 471 U.S. 307, 314 (1985). "It is well established that language in jury instructions of any presumption, whether conclusive or rebuttable, that has the effect of shifting from the prosecution to a defendant the burden of proof on an essential element of the crime charged offends the defendant's Federal constitutional right to due process." Commonwealth v. Medina, 430 Mass. 800, 802 (2000), citing Sandstrom, supra at 519-520, 523-524.

 It would thus be error to instruct the jury that malice is "presumed" from particular facts, because such an instruction shifts the burden to the defendant of disproving malice, an element of murder. [Note 8] See, e.g., Commonwealth v. Repoza, 400 Mass. 516, 521, cert. denied, 484 U.S. 935 (1987); Commonwealth v. Zezima, 387 Mass. 748, 751-752 (1982); Commonwealth v. Callahan, 380 Mass. 821, 822-823 (1980), S.C., 386 Mass. 784 (1982), S.C., 401 Mass. 627 (1988). The question here is whether the challenged instruction, "malice is implied to every cruel act," had the effect of telling the jury that malice is presumed from every cruel act.

 If it did, it would be error, because an act may be cruel without being done with malice. "[A] cruel act may be defined simply as an extremely painful one, see Webster's Third New International Dictionary 546 (1961), and proof of a cruel act therefore does not necessarily prove the depraved state of mind that constitutes 

 Page 313 

malice." Hill v. Maloney, 927 F.2d 646, 653 (1st Cir. 1990). Indeed, model instructions in some murder cases recognize that there is "cruelty inherent in any taking of a human life." Commonwealth v. Sok, 439 Mass. 428, 437 (2003). See Commonwealth v. Castillo, 485 Mass. 852, 864 (2020), quoting Model Jury Instructions on Homicide 54-55 (2018) (same). The judge here did not give the jury any definition or explanation of the word "cruel" -- saying only that "[e]very murder is cruel" -- and thus left the jury free to apply either or both of the foregoing understandings of the word. We must therefore determine whether the instruction mandated a presumption of malice from a "cruel" act and, if so, whether this error entitles the defendant to a new trial.

 a. Standard of review. Sandstrom is applied retroactively. See Commonwealth v. White, 392 Mass. 282, 285 (1984). [Note 9] Although the defendant did not object to the instruction at trial or raise the issue in his direct appeal, our courts "excuse[] the failure to raise a constitutional issue at trial or on direct appeal when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures of the case." Commonwealth v. Rembiszewski, 391 Mass. 123, 126 (1984) (G. L. c. 278, § 33E, case). Thus a defendant (like the defendant here) whose direct appeal and plenary review occurred before the 1979 decision in Sandstrom may thereafter raise a mandatory-presumption claim based on Sandstrom. See DeJoinville v. Commonwealth, 381 Mass. 246, 250-251 (1980). [Note 10] In these circumstances, a court "consider[s] the issue as if it were here for review in the regular course" and, "[i]f constitutional error has occurred, we reverse the conviction unless the error was 

 Page 314 

harmless beyond a reasonable doubt" (quotation and citation omitted). [Note 11] Rembiszewski, supra. Review of pre-Sandstrom instructions is, however, "more tolerant" than review of instructions given after Sandstrom was decided. [Note 12] Repoza, 400 Mass. at 520.

 b. Framework for analyzing Sandstrom errors. We begin with an overview of the three-step framework for analyzing claimed Sandstrom errors set forth in Francis, 471 U.S. at 315, 325-326, and followed in Repoza, 400 Mass. at 520; Commonwealth v. Sires, 405 Mass. 598, 600-601 (1989), S.C., 413 Mass. 292 (1992); and later cases. [Note 13] Under Francis, to evaluate a claimed mandatory presumption, we first ask whether "a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense." Francis, supra at 315. If so, then, in the second step, "the potentially offending words must be considered in the context of the charge as a whole" to determine whether "[o]ther instructions might explain the particular infirm language" and thereby prevent a reasonable juror from applying an unconstitutional presumption. Id. If the instructions considered as a whole are infirm, the third step is to inquire whether the error was harmless beyond a reasonable doubt. See id. at 325-326. See also Carella v. California, 491 U.S. 263, 266 (1989) (per curiam); Medina, 430 Mass. at 802.

 c. Applying the Francis analysis. i. The challenged language. We first consider whether the language that "malice is implied to every cruel act," considered by itself, could reasonably have been understood as creating a presumption that relieved the Commonwealth 

 Page 315 

of its burden of proving malice. See Francis, 471 U.S. at 314. We examine "whether a 'reasonable juror could have used the instruction incorrectly.'" Medina, 430 Mass. at 804 n.4, quoting Commonwealth v. Rosa, 422 Mass. 18, 27-28 & n.10 (1996). [Note 14]

 Here, the Commonwealth's brief concedes that, "viewed in isolation, the statement that 'malice . . . is implied to every cruel act' . . . might be understood as creating a presumption of malice." After carefully reviewing the cases bearing on whether an instruction that uses the word "implied" rather than "presumed" may create an unconstitutional presumption, we agree with the Commonwealth's concession. Our analysis of the question is informed by the interplay of a series of decisions of the Supreme Judicial Court and related habeas decisions of the United States Court of Appeals for the First Circuit (First Circuit), considering instructions very similar to the one at issue here: Commonwealth v. Hill, 387 Mass. 619, 624 (1982) (Hill I); Commonwealth v. Libby, 405 Mass. 231, 234-235 (1989) (Libby I); Hill, 927 F.2d at 648 (Hill II); Commonwealth v. Libby, 411 Mass. 177, 181-182 (1991) (Libby II); and Libby v. Duval, 19 F.3d 733, 735 (1st Cir.), cert. denied, 513 U.S. 927 (1994) (Libby III). 

 As we shall explain, these decisions lead us to conclude that, although the Supreme Judicial Court has reached the over-all conclusion that several instructions that used the word "implied" did not create mandatory presumptions, none of those decisions clearly answers the precise question presented at the first step of the Francis analysis: how a reasonable juror could have understood the challenged language standing alone. See Libby II, 411 Mass. at 181-182; Libby I, 405 Mass. at 234-235; Hill I, 387 Mass. at 624-625. In contrast, the First Circuit has twice answered that precise question and ruled that the language standing alone could reasonably be understood, or was reasonably likely to 

 Page 316 

be understood, as creating a mandatory presumption of malice. See Libby III, 19 F.3d at 736; Hill II, 927 F.2d at 649-651. Indeed, in Libby III, supra, the Commonwealth conceded the point, and, as noted, the Commonwealth makes a similar concession here. Although the First Circuit's decisions on questions of Federal law are not binding on us, "we give respectful consideration to such lower Federal court decisions as seem persuasive." Commonwealth v. Masskow, 362 Mass. 662, 667 (1972).

 In the first case, Hill I, the Supreme Judicial Court concluded that a malice instruction including the phrase "malice is implied from any deliberate or cruel act against another, however sudden," did not relieve the Commonwealth of its burden of proof on the issue of intent. Hill I, 387 Mass. at 624. The court reached that conclusion, however, only after considering the charge as a whole. See id. at 624-625. Hill I was decided before Francis and did not follow its three-step approach. Thus Hill I provides little if any guidance on whether an instruction using the word "implied" could reasonably be viewed in isolation as creating a mandatory presumption.

 In the second case, Libby I, the Supreme Judicial Court considered a malice instruction that included the phrase "[m]alice is implied in every deliberate cruel act by one against another." Libby I, 405 Mass. at 234-235. Although Libby I was decided after Francis and included a citation to it, the Libby I court did not appear to apply Francis's three-step approach. See id. at 235. To be sure, the court expressed its view that "[t]he word 'implied' carries far less force than does the word 'presumed' or even the word 'inferred.' To say something is implied does not make it so. To say something is 'presumed' does." Id. The court did not discuss, however, whether this represented an assessment of how a reasonable juror could have understood the challenged language in isolation, as required at the first step of Francis. [Note 15] Furthermore, the court did not rule that an instruction that a fact "implies" an element of a crime is of no constitutional concern. To the contrary, the court cautioned that "[t]he judge's statement was too broad as applied to all deliberate cruel acts"; that is, it was not universally true that a deliberate cruel act implied malice. Libby I, supra. "In the context of the facts of th[e] case," however, where 

 Page 317 

the "victim [was] stabbed severely nine times," and "in light of the judge's entire instruction on malice," the court saw no "unconstitutional presumption dictated to the jury." Id. This ultimate resolution left unresolved the intermediate question of how a reasonable juror could interpret the challenged "malice is implied" language taken by itself.

 The third case, Hill II, arose when the defendant in Hill I sought Federal habeas relief. See Hill II, 927 F.2d at 647-648. After a lengthy analysis of how jurors could reasonably have understood the specific challenged language -- "malice is implied from any deliberate or cruel act against another, however sudden" -- the First Circuit concluded that "it is clear that a reasonable juror could easily have viewed such an instruction as mandatory" (quotation and citations omitted). Id. at 648, 651. "The charge that 'malice is implied' appears to state an unswerving principle of law no less than did the offending language in Sandstrom, ostensibly informing the jury that a finding of a 'deliberate' or 'cruel' act resolves the question of malice." Id. at 649-650. "The jurors 'were not told that they had a choice, or that they might infer that conclusion; they were told only that [malice is implied],' Sandstrom, 442 U.S. at 515 (emphasis added)." Hill II, 927 F.2d at 650. [Note 16]

 The fourth case, Libby II, arose when the defendant in Libby I returned to the Supreme Judicial Court in connection with a separate issue and, based on the intervening First Circuit decision in Hill II, also sought reconsideration of the court's conclusion in Libby I. See Libby II, 411 Mass. at 181. In rejecting the defendant's renewed argument, the court first quoted the conclusion in Libby I that in light of the facts of the case "and in light of the judge's entire instruction on malice," no unconstitutional presumption had been created by the language "[m]alice is implied 

 Page 318 

in every deliberate cruel act by one against another." Libby II, supra at 181-182, quoting Libby I, 405 Mass. at 235. The Libby II court then distinguished Hill II, observing that in the language held problematic in Hill II ("malice is implied from any deliberate or cruel act against another, however sudden"), "[i]t was precisely the 'or' conjunction which the First Circuit . . . found rendered the instruction improper." Libby II, supra. Notably, the court did not mention or rely further upon its earlier discussion of the difference between the words "implied" and "presumed," nor did the court express disagreement with the First Circuit's conclusion that the instruction "'malice is implied' appears to state an unswerving principle of law . . . [that] resolves the question of malice." Hill II, 927 F.2d at 649-650.

 Fifth and finally, the defendant in Libby I and Libby II sought Federal habeas relief. See Libby III, 19 F.3d at 736. The First Circuit, despite recognizing that the Supreme Judicial Court had twice rejected Libby's mandatory-presumption claim, see id., concluded at the first step of the analysis "that it was reasonably likely that the jurors construed the trial judge's instruction ["[m]alice is implied in every deliberate cruel act by one against another"] as requiring a finding of malice upon a finding that the stabbing was 'deliberate' and 'cruel.'" [Note 17] Id. The court did so largely based on the analysis articulated in Hill II and also because the State defendants conceded the point. See id. The court went on to conclude, at the second step, that other parts of the instructions did not sufficiently explain the infirm language. See id. at 736-738. In doing so, the court reiterated its concern with the challenged language:

"[B]ecause it was framed in irrefutable and unvarying terms ('[m]alice is implied in every deliberate and cruel act by one against another'), we think it at least reasonably likely that the challenged instruction completely removed the element of malice from the case once the Commonwealth established that petitioner had acted deliberately and cruelly."

Id. at 738.

 What we draw from the five Hill and Libby decisions is that, on the critical Francis step-one question of how a reasonable juror 

 Page 319 

could have understood the "malice is implied" language taken alone, the Supreme Judicial Court's decisions in Hill I, Libby I, and Libby II leave us without clear guidance on whether an instruction using the word "implied," rather than "presumed," risks being interpreted by a reasonable jury as creating an unconstitutional presumption. The First Circuit, in contrast, has determined that reasonable jurors "could easily have viewed such an instruction as mandatory" (quotation and citation omitted), Hill II, 927 F.2d at 651, and indeed "that it was reasonably likely that the jurors construed" such language as creating a mandatory presumption. Libby III, 19 F.3d at 736. Although we find the First Circuit's analysis persuasive, our inquiry is not at an end.

 The Supreme Judicial Court, in other decisions both before and after the various Libby and Hill decisions, recognized that "malice is implied" instructions contribute to the creation of unconstitutional mandatory presumptions. See Commonwealth v. Nieves, 394 Mass. 355, 360-361 (1985); Commonwealth v. Richards, 384 Mass. 396, 402-403 (1981); Commonwealth v. Callahan, 380 Mass. 821, 823, 824-825 (1980). [Note 18] The court has also acknowledged that an instruction may create a mandatory presumption even without using the word "presume." See Commonwealth v. Burkett, 396 Mass. 509, 512-513 (1986). See also Commonwealth v. Shelley, 411 Mass. 692, 694, 696-697 (1992). Cf. Commonwealth v. Pierce, 419 Mass. 28, 38 (1994). In other post-Libby II decisions, the court also recognized, if indirectly, that implied-malice instructions are problematic. See Commonwealth v. Mello, 420 Mass. 375, 389 (1995); Commonwealth v. Ferreira, 417 Mass. 592, 597-598 & n.7 (1994).

 After considering all of these decisions, we accept the Commonwealth's concession that the jury here could reasonably have understood the instruction "malice is implied to every cruel act," taken by itself, to create a presumption that relieved the Commonwealth of its burden of proving malice. We therefore proceed to the second step of the Francis analysis.

 Page 320 

 ii. The remainder of the charge. Under Francis's second step, "the potentially offending words must be considered in the context of the charge as a whole," because other instructions "might have explained the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion." Francis, 471 U.S. at 315, 318-319. See Commonwealth v. Torres, 420 Mass. 479, 490 (1995). "Francis determines that a reviewing court cannot have confidence in the propriety of a subsequent verdict of guilty unless some other portion of the charge not only contradicts the incorrect language but, through explanation, harmonizes it with the entire charge as well." Repoza, 400 Mass. at 520.

 Here, the Commonwealth argues that several of the judge's other instructions precluded the jury from applying any mandatory presumption of malice. First, the Commonwealth asserts that "[t]he judge correctly and precisely defined malice." In the passages of the instructions cited by the Commonwealth, however, the judge did not purport to "define" malice, i.e., by explaining what must be proved to show malice; rather, he gave various examples of how malice could be proved, without saying that those examples were an exhaustive list and that the Commonwealth must prove facts equating to at least one of them. [Note 19] Moreover, even if the judge had given what purported to be a complete definition of malice that omitted any mention of cruel acts, such a definition would "merely contradict[] and . . . not explain" the problematic "malice is implied to every cruel act" language; such a definition would "not suffice to absolve the infirmity," because we have "no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." Francis, 471 U.S. at 322. See Medina, 430 Mass. at 802, 805.

 Page 321 

 Second, the Commonwealth points to passages in which the judge stated that "'malice' . . . does not simply mean or imply hatred or ill will, necessarily, but includes any intention to inflict grievous and serious injury without excuse and without justification," and that "[m]otive is not a necessary element of the crime of murder." We fail to see how either of these statements explained to the jury that the judge's subsequent instruction, "malice is implied to every cruel act," did not mean what it said: that if an act was cruel, it was done with malice. And the judge's open-ended statement to the jury that "malice . . . would be cold-blooded desire for revenge, among other things, or other demonstrations or evidence" did nothing to help focus the jury on a more limited and proper concept of malice. 

 Third, the Commonwealth notes, the judge told the jury that the Commonwealth "must prove beyond a reasonable doubt all of the elements which make up the crime." But "general instructions as to the prosecution's burden . . . do not dissipate [an] error in the challenged portion of the instructions." Francis, 471 U.S. at 319-320. Here, the instructions on the Commonwealth's burden did not go beyond generalities. The judge did not tell the jury in so many words what were the "elements" of murder (or manslaughter), or say that malice was an "element" of murder. Significantly, the judge did not instruct the jury that the Commonwealth had to prove malice beyond a reasonable doubt in order to prove murder. [Note 20] See Nieves, 394 Mass. at 362, quoting Commonwealth v. Stokes, 374 Mass. 583, 591 (1978) (language suggesting presumption of malice was not negated, where "the judge's instructions 'treated the issue of burden of proof only in general terms [and at] no time did he discuss the burden of proof as to malice'"). Cf. Shelley, 411 Mass. at 696-697 (judge's final instruction, "the defendant does not have to rebut malice[;] . . . the prosecution must prove . . . malice . . . beyond a reasonable doubt," eliminated any possibility that jury were misled by other language suggesting presumption of malice).

 Fourth, the Commonwealth asserts that the judge's instructions on manslaughter "clarif[ied]" the problematic phrase by stating, "If there was an absence of malice, the crime is manslaughter." We are not persuaded. Such a statement in no way clarifies for the 

 Page 322 

jury that, contrary to the instruction that "malice is implied to every cruel act," they should not take proof of a cruel act as sufficient to prove malice. Even if the manslaughter instructions could somehow be viewed as "contradict[ing] the incorrect language," they still did not, "through explanation, harmonize[] it with the entire charge as well," and thus we "cannot have confidence in the propriety of [the] subsequent verdict of guilty." Repoza, 400 Mass. at 520.

 Fifth, the Commonwealth argues that the instructions as a whole imposed a burden on the prosecution that was higher than required and were therefore unlikely to be construed as creating a presumption of malice. We do not agree. The judge's statement linking malice to a cold-blooded desire for revenge did not suggest that, in order to prove malice, the Commonwealth was required to prove such a desire. Nor can we accept the Commonwealth's surprising suggestion that the challenged language itself, "malice is implied to every cruel act," contributed to imposing a higher-than-required burden on the Commonwealth. The judge did not define or explain the word "cruel," nor did he equate it to a cold-blooded desire for revenge. This left the jury free to apply the other, more encompassing understandings of the word "cruel" that we have already discussed.

 In sum, nothing in the judge's other instructions explained and negated the effect of the erroneous instruction that "malice is implied to every cruel act."

 iii. Harmless error. We now address whether the Sandstrom "error was harmless beyond a reasonable doubt." Medina, 430 Mass. at 802. See Carella, 491 U.S. at 266; Francis, 471 U.S. at 325-326. Medina adopted "[t]he harmless error analysis mandated by Yates v. Evatt, [500 U.S. 391,] 404 [(1991)]," specifically tailored to Sandstrom errors. Medina, supra. See Commonwealth v. Nolin, 448 Mass. 207, 218-219 (2007). [Note 21]

 Page 323 

 The Yates analysis "entails two distinct steps." Medina, 430 Mass. at 802. "First, the reviewing court must determine what evidence the jury actually considered in reaching their verdict -- a determination made by analyzing the language of the instructions given to the jury and applying the customary assumption 'that jurors follow instructions.'" Id. at 802-803, quoting Yates, 500 U.S. at 404. "Second, the court must 'weigh the probative force of that evidence as against the probative force of the presumption standing alone.'" Medina, supra at 803, quoting Yates, supra. "To conclude that the burden-shifting presumption in the instruction was harmless and did not contribute to the jury's verdict, the evidence considered by the jury in accordance with the instructions must be 'so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption.'" Medina, supra, quoting Yates, supra at 405.

 Significantly, "this review should be limited to evidence bearing on the predicating fact from which, according to the terms of the erroneous instruction, the ultimate fact was to be conclusively presumed." Medina, 430 Mass. at 803, quoting Yates, 500 U.S. at 405-406. "In such a case, a burden-shifting presumption in the instruction would nevertheless be harmless if the facts to be relied on in the presumption are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact" (quotations omitted). Id. "This is so because, in these circumstances, making the findings would be functionally equivalent to finding the element to be presumed, and it would thus be beyond a reasonable doubt . . . that the jury found the facts necessary to support the conviction" (quotation and citation omitted). Medina, supra. In the margin we provide an overview of how the Medina court applied this framework to the instruction there at issue. [Note 22]

 Here, accordingly, where the jury were told that "malice is implied to every cruel act," reasonable jurors could have "understood 

 Page 324 

the malice instruction to limit their consideration of the case to the evidence that bore on" whether the defendant, in killing the victim, had committed any "cruel act." Medina, 430 Mass. at 806. "Our review of the record on appeal, therefore, is properly limited to the evidence relevant to the predicating fact, [a cruel act], from which, on the terms of the deficient instruction, the ultimate fact, malice, was to be conclusively presumed." Id. "[I]f the evidence that the jury found sufficient to prove that fact (here, [a cruel act]) is so closely bound up with the ultimate fact presumed (here, malice) that they could not reasonably have found the former without also finding the latter, then the presumption was, beyond a reasonable doubt, harmless to the defendant." Id.

 Because the judge here gave no guidance regarding what would constitute a cruel act (except for the statement that "[e]very murder is cruel"), we cannot discount the possibility that the jury understood an act to be "cruel" if it were "extremely painful," Hill II, 927 F.2d at 653, or if it caused the victim's death, see Sok, 439 Mass. at 437. In other words, the "evidence bearing on the predicating fact," Medina, 430 Mass. at 803, could have consisted simply of the evidence that showed that the defendant shot the victim in the chest, which could be thought to be extremely painful, or that it caused his death, which was undisputed.

 But neither extreme pain nor the fact of death "is so closely bound up with the ultimate fact presumed (here, malice) that [the jury] could not reasonably have found the former without also finding the latter." Medina, 430 Mass. at 806. For example, even if we assume that the jury here rejected the defendant's claim of complete self-defense, [Note 23] the jury still could have found that responding to a knife attack with a gunshot to the victim's chest constituted the use of excessive force in self-defense. Had the jury been instructed that malice required the absence of mitigating circumstances, see Commonwealth v. McInerney, 373 Mass. 136, 140-141 (1977), the jury could thus have found that the shooting, despite causing extreme pain and death, was committed under mitigating circumstances and so was not done with malice and warranted a verdict of voluntary manslaughter. [Note 24]

 Page 325 

 Here, however, the jury could have found both excessive force in self-defense and malice based on a "cruel act," and the judge's instructions did not tell the jury how to proceed in such a situation. The judge instructed that "[i]f there was malice, it is murder. If there was an absence of malice, the crime is manslaughter." But he did not instruct that malice required the absence of mitigating circumstances, [Note 25] or that malice required something more than merely a cruel act. To the contrary, the jury were told that "malice . . . would be cold-blooded desire for revenge, among other things, or other demonstrations or evidence" (emphasis added). Thus the jury, despite finding excessive force in self-defense, could have applied the "malice is implied to every cruel act" instruction, in conjunction with the "[i]f there was malice, it is murder" instruction, to find the defendant guilty of murder rather than manslaughter.

 Accordingly, we cannot conclude that the instruction was harmless beyond a reasonable doubt. The defendant is entitled to a new trial on the murder indictment. In light of this conclusion, we need not address the defendant's remaining claims, see supra at 310-311, which are neither persuasive nor concern matters likely to arise at any retrial.

 Conclusion. The order denying the motion for a new trial on the murder indictment is reversed, the judgment of conviction of murder in the second degree is vacated, and the verdict is set aside. The order denying the rule 30 (a) motion is affirmed.

So ordered.

FOOTNOTES
[Note 1] The defendant also appeals from an order denying his 2020 motion for release from unlawful confinement or to stay execution of his sentence. See Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001). The motion asserted that his imprisonment during the COVID-19 pandemic constituted cruel and unusual punishment. We affirm the denial of that motion, as the defendant has not attempted to show that prison officials had the culpable state of mind necessary to support such a claim. See Foster v. Commissioner of Correction, 488 Mass. 643, 644, 652-653 (2021). The defendant also sought, on COVID-19 grounds, a stay of execution of sentence pending appeal of the order denying his motion for a new trial. The stay was denied, and the denial was affirmed in Commonwealth v. Harris, 487 Mass. 1016, 1019 (2021). 

[Note 2] "Before July 1, 1979, G. L. c. 278, § 33E, provided for review under § 33E in cases in which the defendant was indicted for murder in the first degree, and convicted of murder either in the first or second degree." Commonwealth v. Zezima, 387 Mass. 748, 749 n.2 (1982). See Commonwealth v. Davis, 380 Mass. 1, 12-17 (1980). 

[Note 3] The defendant was also indicted for and convicted of unlawfully carrying a firearm; that conviction was placed on file. 

[Note 4] The defendant testified that as he was walking toward the street corner, a man he knew approached him and warned him that Haynes and Clark were around the corner and were talking about "get[ting]" him. The man offered him a knife and a gun, both of which the defendant refused, but the man pushed the gun into the defendant's pocket and walked away. 

[Note 5] The defendant had also supplemented his motion by requesting in the alternative that his murder conviction be reduced to manslaughter pursuant to Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995). The judge denied this motion on estoppel grounds. See Harris, 376 Mass. at 211. The defendant does not press the issue in this appeal. 

[Note 6] For simplicity, we will hereinafter quote this statement in the form "malice is implied to every cruel act," omitting the judge's comment "as I have said." The judge had not previously made any reference to implying malice, from cruel acts or otherwise. 

[Note 7] The defendant also cites, but makes no separate argument based upon, art. 12 of the Massachusetts Declaration of Rights. 

[Note 8] "Malice aforethought may be shown by proof that the defendant, without justification or excuse, intended to kill the victim or to do the victim grievous bodily harm. . . . However, proof of such an intent is not required because malice aforethought may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." Commonwealth v. Grey, 399 Mass. 469, 470 n.1 (1987). See Commonwealth v. Judge, 420 Mass. 433, 437 (1995) (describing three "prongs" of malice). 

[Note 9] The Commonwealth does not argue that Sandstrom's retroactivity should be revisited in light of the retroactivity principles adopted in Teague v. Lane, 489 U.S. 288, 311 (1989), and Commonwealth v. Bray, 407 Mass. 296, 300-301 (1990). See Commonwealth v. Petetabella, 459 Mass. 177, 189 (2011) (noting but not resolving issue). 

[Note 10] We thus disagree with the motion judge's conclusion that the defendant's plenary review necessarily considered and rejected any possible error in allocating the burden of proof, so that his current argument is barred by estoppel. The judge construed the argument as based on Mullaney v. Wilbur, 421 U.S. 684 (1975), which the Supreme Judicial Court considered in the course of rejecting the defendant's argument on a separate burden-shifting issue. See Harris, 376 Mass. at 209-210. But the defendant's mandatory-presumption claim is based not simply on Mullaney but also on Sandstrom. See DeJoinville, 381 Mass. at 250-251. 

[Note 11] Claims of Sandstrom error were common in the years following the 1979 Sandstrom decision and not infrequently succeeded. See, e.g., Commonwealth v. Nieves, 394 Mass. 355, 358-361 (1985); Zezima, 387 Mass. at 751-752; Commonwealth v. Stillwell, 387 Mass. 730, 731-734 (1982); Commonwealth v. Palmer, 386 Mass. 35, 35-38 (1982); Commonwealth v. Moreira, 385 Mass. 792, 794-797 (1982); DeJoinville, 381 Mass. at 252-254; Callahan, 380 Mass. at 822-825. As jury instructions were modified in light of Sandstrom, claims of such errors became less common; the most recent reported decision granting relief on such a claim appears to be Commonwealth v. Talkowski, 33 Mass. App. Ct. 720, 722-723, 726-727 (1992). 

[Note 12] In the only appellate decision to reference this "more tolerant" approach, a Sandstrom error occurring before Sandstrom was decided was held to warrant a new trial. See Talkowski, 33 Mass. App. Ct. at 722-723, 727. 

[Note 13] "Because Francis develops the method by which appellate courts should review and evaluate a Sandstrom error, its holding is fully retroactive." Repoza, 400 Mass. at 520. 

[Note 14] Francis's focus on how a reasonable juror could have understood the instruction was later altered as a matter of Federal law by Boyde v. California, 494 U.S. 370, 378-380 (1990) (question is whether there is "reasonable likelihood" that jurors applied challenged instructions in unconstitutional manner), and Estelle v. McGuire, 502 U.S. 62, 72 n.4 (1991) (same). But the Supreme Judicial Court made clear in Medina that we continue to use the Rosa standard quoted in the text, which essentially mirrors Francis, but in any event "is more favorable to a defendant than the current Federal [Boyde/Estelle] standard." Medina, 430 Mass. at 804 n.4. See Commonwealth v. Russell, 470 Mass. 464, 472 (2015) (same). 

[Note 15] We are unsure how to interpret this omission, because cases decided both shortly before and immediately after Libby I expressly recognized and applied the reasonable-juror standard. See Repoza, 400 Mass. at 518, 521; Sires, 405 Mass. at 600. 

[Note 16] The First Circuit also thought it telling that "the language used in the [challenged] instruction was drawn nearly verbatim from an old Massachusetts case in which it clearly was intended to set up a mandatory presumption[,] Commonwealth v. Webster, 59 Mass. 295 ( 5 Cush. 295), 304 (1850)." Hill II, 927 F.2d at 650. The court in Webster had said that "malice is implied from any deliberate or cruel act against another, however sudden," and then expressly placed the burden on the defendant to prove any "circumstances of accident, necessity, or infirmity . . . ." Webster, supra at 304-305. In other words, said the First Circuit, the challenged instruction in Hill II "borrowed language specifically designed to create what is now unquestionably an unconstitutional presumption. It is therefore no stretch for us to conclude that this language is at least easily susceptible to such an interpretation." Hill II, supra. 

[Note 17] The First Circuit reached this conclusion despite applying a more State-friendly standard: whether there was a "reasonable likelihood" that the jury applied the challenged instruction in an unconstitutional manner. Libby III, 19 F.3d at 736, citing Boyde, 494 U.S. at 380. See note 14, supra. 

[Note 18] "Imply" has been defined as meaning "to indicate or call for recognition of as existent, present, or related not by express statement but by logical inference or association or necessary consequence," or "to involve as a necessary concomitant" (emphasis added). Webster's Third New International Dictionary 1135 (2002). The emphasized phrases suggest that a reasonable juror could interpret "malice is implied to every cruel act" to mean that malice is a necessary consequence or concomitant of every cruel act. The word "every" (as used in "every cruel act") conveys a similar sense of an "irrefutable and unvarying" rule, as the First Circuit recognized in Libby III, 19 F.3d at 738. 

[Note 19] The examples included separate statements that "[a]ny intentional killing of a human being without legal justification is malicious"; that malice "includes any intention to inflict grievous and serious injury without excuse and without justification"; and that the intentional and unjustified use of force "which as used will probably do grievous bodily harm to that other person, and . . . will create a clear and plain and strong likelihood that the other will die as a result, . . . is an act with malice." These generally correspond to the three prongs of malice. See note 8, supra. Because the judge phrased these as examples, we reject the Commonwealth's argument that the third example imposed a "burden" on the Commonwealth to show something more than a cruel act and thus negated the effect of the mandatory presumption. 

[Note 20] Even had the judge done so, "[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to [malice] could be satisfied." Francis, 471 U.S. at 319, quoting Sandstrom, 442 U.S. at 518-519 n.7. 

[Note 21] Two years after Yates, the United States Supreme Court, for purposes of Federal habeas review of claims of constitutional trial error, replaced the Yates harmless error standard with a less demanding inquiry into "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946). See Brecht, supra at 630; Libby III, 19 F.3d at 738-739. That change in habeas law does not affect our analysis here; the Supreme Judicial Court made clear in Medina and Nolin that Yates still governs in our courts. Another aspect of Yates governing Federal habeas review was overruled in Estelle, 502 U.S. at 72 n.4. See note 14, supra. That likewise does not affect our analysis here. 

[Note 22] In Medina, "[a] reasonable juror could have understood the instruction to mean the following: if you find that the defendant committed an unlawful killing, that is, a killing without legal excuse or justification, then malice, the intent to kill or to inflict injury without palliation, is to be conclusively presumed" (footnote omitted). The court therefore "limited [its review] to the evidence relevant to the predicating fact, the unlawful killing, from which, on the terms of the deficient instruction, the ultimate fact, malice, was to be conclusively presumed." Id. at 806. 

[Note 23] The jury were instructed that if the defendant acted in proper self-defense and did not use excessive force, they should find him not guilty. 

[Note 24] Put differently, a finding of excessive force in self-defense, causing extreme pain and death, would not "be functionally equivalent to finding" malice (quotation and citation omitted). Medina, 430 Mass. at 803. The use of excessive force in self-defense mitigates murder to voluntary manslaughter. See Commonwealth v. Whitman, 430 Mass. 746, 750-751 (2000). 

[Note 25] The jury were given three examples of malice, each of which depended on the absence of justification or excuse, see note 19, supra, but were not told either that those examples were exclusive or that -- despite the instruction that "malice is implied to every cruel act" -- something more than a cruel act was required to prove malice. Cf. Medina, 430 Mass. at 806-812 (error harmless where predicate facts jury had to find in order to trigger presumption of malice included absence of "excuse or justification," evidence of mitigation did not raise reasonable doubt as to killer's malice, and primary defense was misidentification). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.